STATE of Missouri, ex rel. WHITE ADVERTISING INTERNATIONAL, Respondent,

v.

STATE HIGHWAY COMMISSION OF MISSOURI, Appellant.

No. WD 34086.

Missouri Court of Appeals, Western District.

Aug. 2, 1983.

Bruce A. Ring and Dennis J. Redel, Jefferson City, for appellant.

W.R. England, III and Stephen G. Newman, Jefferson City, for respondent.

Before TURNAGE, P.J., and PRITCHARD and KENNEDY, JJ.

KENNEDY, Judge.

This is an appeal by the State Highway Commission from a judgment of the Circuit Court of Cole County vacating an order of the Commission requiring a certain highway sign of White Advertising International to be removed.

We reverse the judgment of the trial court and reinstate the order of the Commission.

White Advertising International erected an outdoor advertising sign adjacent to Route 65 in Christian County, Missouri, one-half mile south of the point where Route 14 intersects the same. The sign was erected November 18, 1971. The Commission had issued a permit for said sign under date of September 9, 1971, pursuant to a written application of White Advertising which was filed August 23, 1971.

The application for permit, filed before the erection of the sign, had represented the location of the sign as being "within 1000 feet of an existing commercial or industrial activity, ... being *car dealer.*" The words "car dealer" are printed by hand, while the other words were printed on a form supplied by the Commission. The form listed the several situations in which a sign could be lawful, none of the others of which applied to this sign. Actually, as will be shown later in this opinion, the sign was 2,376 feet from any car dealer's premises. The application said, "Applicant understands and agrees that the license to be issued for said sign is conditioned upon complete compliance with existing laws and upon the verity of the representation herein made by applicant and that same is invalid should the sign involved be found to be nonconforming under Missouri law."

The first permit (September 9, 1971) expired by its terms on December 31, 1971. The permit was renewed March 13, 1972, apparently automatically without another application by White Advertising. This permit expired by its terms on December 31, 1972.

An "Application to Renew Current Permit to Maintain Outdoor Advertising," dated January 12, 1973, was filed by White Advertising. This application was on a printed form furnished by the Commission. In the upper right-hand corner of the application is printed the words "permanent permit." There had been no such designation on the first application filed by White Advertising, nor any such designation on either of the two annual permits which had been issued.[1] Mr. Hayter, permit inspector for District 8 of the Highway Commission, found upon inspection that there was no commercial or industrial activity within 1,000 feet of the sign. As a matter of fact, the nearest commercial or industrial activi-

---

1. As will be seen *infra,* the permit statute, § 226.530, RSMo 1969, had in the meantime been repealed. A new statute, § 226.550, RSMo 1978, had been enacted, providing for "one-time permanent permits."

ty was the Campbell Ford dealership, which was located 2,376 feet from the sign. The Commission therefore did not grant the application of White Advertising for the "permanent permit."

The sign remained where it was, with no current permit. On October 11, 1978, the Commission gave notice to White Advertising to remove the sign. The reason given by the notice was that "[t]he sign was erected after January 1, 1968, but before March 30, 1972, contrary to the: ... location provisions of Sections 226.520 and 226.-540 RSMo 1969." This notice to remove sign precipitated the present certiorari action, which resulted in the circuit court order appealed from, holding the Commission order to remove sign "not authorize[d]."

There is no doubt the sign was unlawfully located from the time of its erection in 1971 down to and including the time of the hearing in the present case. The only attempted justification for the sign's location was its proximity to a "commercial or industrial activity." It was upon that representation that the original permit was issued, and it was upon that contention that its location is sought to be defended both in the circuit court and here.

The parties stipulated that the sign at the time of the hearing (May 13, 1982) was 2,376 feet from the Campbell Ford dealership. They further stipulated that in January 1973 when Mr. Hayter made his inspection, "there was no commercial or industrial activity within 1,000 feet of the sign." They further stipulated that:

Bill Hayter, permit inspector for Respondent's District 8, if called to testify, would state that he is familiar with the location of the sign. Although Mr. Hayter did not become permit inspector for this District until June, 1972, he has lived and worked in this area since before the sign's erection (i.e. November 18, 1971), and he would testify that at the date of erection of the sign the closest commercial or industrial activity was the Campbell Ford dealership at the junction of Route 14 and Route 65. Mr. Hayter

would also testify that the Campbell Ford dealership never extended any further than it is at present.

White Advertising contends, in the face of the foregoing stipulation, that this does not prove that the sign at the time of its erection (November 18, 1971) was not within 1,000 feet of a commercial or industrial activity. The trial court adopted as its findings of fact the fact stipulation of the parties. The court then states as a "conclusion of law" that "[t]here is no direct evidence that the sign was not within 1,000 feet of a commercial or industrial activity at the time it was erected."

White Advertising takes the position that the Commission has the burden of proof to prove the allegations of its notice, and that it has failed to sustain such burden.

We will assume without deciding that the Commission had the burden to prove the unlawfulness of the sign for which it issued its notice to remove. We hold that the evidence was clear on that point, and that the Commission did in fact meet its burden to prove that the sign was not within 1,000 feet of any commercial or industrial activity. All the evidence was to that effect, and there was none to the contrary. We are faced here with no evidence from which conflicting inferences might be drawn, nor are we faced with any question of the credibility of witnesses, in both of which instances we would defer to the trial judge's fact findings. On a written stipulation of facts, however, we are as well equipped as the trial judge to decide the facts. *Wise v. Strong,* 341 S.W.2d 633, 636 (Mo.App.1960). See *Treece State Bank v. Wade,* 283 S.W. 714, 716–17 (Mo.App.1926). Our decision is that the sign was unlawfully located at the time of its erection and at all times thereafter down to and including the date of the circuit court hearing.

White Advertising says, however, that that is not the end of the matter. It argues that the Commission is *equitably estopped* to require the removal of the sign. It states its argument as follows:

It is respondent's position that appellant should be estopped from claiming that this sign was unlawfully erected. The reasons for applying equitable estoppel against appellant in this case are (1) respondent holds a one-time permanent permit from appellant for the subject sign; (2) the evidence supports the elements of equitable estoppel; (3) appellant's action in attempting to require removal of the subject sign works a serious injustice to respondent; and (4) the public's interest would not be unduly damaged by the imposition of estoppel.

Then White points to 7 CSR 10–6.-070(5)(D), which provides for the voiding of permits upon "[a]ny misrepresentation of a material fact on any application" and which provides for the notification of the sign owner "of the voiding of the permit emblem." White alleges it was never notified of the voiding of the permit.

We need only address the major premise of White's argument, i.e., that the Commission had issued a "one-time permanent permit" by which it was bound, and it was thereafter estopped to condemn the sign.

The provision for a "one-time permanent permit" became effective March 30, 1972, § 226.550, RSMo 1978. It provided that within 90 days after March 30, 1972, the Commission should issue permits and identification tags upon application and the payment of a prescribed fee "for any structure lawfully in existence on the day prior" to the effective date of this act, with certain exceptions, § 226.550.2, RSMo 1978. It further provided that "any sign or structure which was not in compliance with ... location requirements of the act repealed hereby, wheresoever located, shall not be considered a lawfully existing sign or structure." § 226.550.2(g)(2), RSMo 1978.

White Advertising never received a "one-time permanent permit" for the sign in controversy. It applied for the same but never received it, because of its impermissible location. A one-time permanent permit for this sign would have been issued in direct violation of the above-quoted section, § 226.550.2(g)(2), RSMo 1978.

The permits under which the sign had been erected and maintained through December 31, 1972, were temporary annual permits, each expiring by its own terms on December 31 of the year in which it was issued. The statute relating to permits at that time, now repealed, was the following:

The state highway commission is authorized to issue permits for the erection and maintenance of outdoor advertising along the interstate and primary highway systems and subject to section 226.540 to promulgate only those rules and regulations of minimal necessity and consistent with customary use to secure to this state any federal aid contingent upon compliance with federal laws, rules and regulations relating to outdoor advertising. Such commission rules and regulations shall be filed in the office of secretary of state of the state of Missouri. Such rule or regulation, or any amendment thereto shall become interimly effective thirty days after such filing, and shall remain in effect pending amendment, approval or rejection by the general assembly in the next regular or special session.

§ 226.530, RSMo 1969 (repealed).

Section 226.550, RSMo 1969 (repealed), provided for the collection of fees for the issuance of permits.

The office of these permits under the now-repealed original act is nebulous. A sign comporting with legal standards as provided in such act was permitted whether it was authorized by a permit or not, while unlawful signs were prohibited without reference to whether they had permits. We are not informed whether regulations, as provided by § 226.530, RSMo 1969 (repealed), were ever adopted by the Commission. The Commission in an internal memo accompanying printed form applications for permits, said to its District Engineers:

It is possible that you have had, or will have, requests from outdoor advertising interests for license applications. These forms are for use in case you receive such requests. The forms are not to be dis-

tributed or supplied to any individual or company, unless requested.

. . . .

Again, these permit forms are not to be distributed unless you receive requests, and the applications will be received on a voluntary basis from the sign company. For the present, you will rely on the information submitted by the applicant on the Application for License regarding the legality of the sign, its size and all other information that is received. No checks are to be made, for the time being, by your personnel regarding the accuracy of the information indicated on the application.

The permit which was originally issued by the Commission, and the permit which was issued in renewal thereof, whatever their efficacy, had expired on December 31, 1972. White Advertising never received a "one-time permanent permit" and indeed was not entitled to a one-time permanent permit because of the unlawful location of the sign. § 226.550.2(g)(2), RSMo 1978.

White's argument that the Commission was estopped by the permit it originally issued in reliance upon White's misrepresentation of fact as to the sign's location, is an argument which we do not need to labor to reject. 28 Am.Jur.2d *Estoppel and Waiver* § 79 (1966); 31 C.J.S. *Estoppel* § 75 (1964).

The judgment of the circuit court is reversed, and the order of the Commission for the removal of the sign is hereby reinstated.

All concur.