AVIATION SUPPLY CORPORATION,
Appellant,

v.

R.S.B.I. AEROSPACE, INC., and
Ross Barber, Respondents,

and

Barber & Sons Tobacco Company,
Inc., Intervenor–Respondent.

No. WD 47608.

Missouri Court of Appeals,
Western District.

Dec. 28, 1993.

Joe B. Whisler, Kansas City, for appellant.

Thomas J. Cox, Kansas City, for respondents.

Timothy Joseph Sear, Kansas City, for intervenor-respondent.

Before HANNA, P.J., and LOWENSTEIN and FENNER, JJ.

FENNER, Judge.

Appellant, Aviation Supply Corporation (ASC), appeals the judgment of the trial court quashing its garnishment of defendant Ross Barber's Individual Retirement Accounts (IRAs).

Underlying this action is a judgment which was entered on January 29, 1992, in the United States District Court for the Western District of Missouri, Western Division, in Aviation Supply Corporation v. R.S.B.I. Aerospace, Inc. (R.S.B.I.) and Mr. Ross Barber. This judgment, in case number 91–1109–CV–W–3, was granted against R.S.B.I. in the amount of $328,536.14 and against Ross Barber in the amount of $325,000.00. This judgment was registered in the Circuit Court of Jackson County, Missouri in Aviation Supply Corporation v. R.S.B.I. Aerospace, Inc. and Mr. Ross Barber, case number CV92–5944. On March 26, 1992, ASC filed a garnishment in the Jackson County case and service of said garnishment was effected on April 3, 1992. The garnishment was served upon the United Missouri Bank of Kansas City (UMB) as garnishee. The UMB held assets of Ross Barber in certain accounts including IRAs.

On June 3, 1992, Barber & Sons filed a Motion to Intervene in the garnishment proceeding and a Motion to Quash or Limit the garnishment. Barber & Sons claimed to hold a perfected first lien and security interest on most of Ross Barber's personal property including the IRAs held at UMB. Barber & Sons claimed that its lien was superior to the execution lien of ASC. The trial court ruled in favor of Barber & Sons finding that its lien had priority over the lien of ASC.

In its first point on appeal, ASC argues that the trial court erred by failing to issue a statement of the grounds for its decision and findings on all controverted issues.

As part of its Response to the Motion of Barber & Sons Tobacco Company, Inc. to Quash or Limit Garnishment, ASC made a request for findings as follows:

[ASC] respectfully requests, pursuant to Mo.R.C.P. 73(a)(2), that the court issue a statement of grounds for its decision and findings as to all controverted fact issues as may appear during the pendency of this action.

Rule 73.01(a)(2) provides, in pertinent part, that:

(a) In cases tried without a jury ...

(2) The court shall render such judgment that it thinks proper under the law and the evidence. If any party so requests before final submission of the case, the court shall dictate to the court reporter, or prepare and file, a brief opinion containing a statement of the grounds for its decision and the method of determining any damages awarded; and may, or if requested by counsel, shall, include its findings on such controverted fact issues as have been specified by counsel. All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached.

Rule 73.01(a)(2) requires that a request for a statement of the grounds for a decision specify the particular issues to be resolved. The trial court is not required to respond to a general request for findings that does not identify the specific factual or legal questions sought to be addressed. *Dardick v. Dardick*, 670 S.W.2d 865, 867 (Mo. banc 1984), (citing *Snider v. Snider*, 570 S.W.2d 770, 774–75 (Mo.App.1978)).

ASC's request for a statement of the grounds and findings of fact was a general request. The trial court was not required to make specific findings pursuant to ASC's general request.

ASC's first point is denied.

In its second point, ASC argues that the trial court's judgment was against the weight of the evidence and that there is no substantial evidence to support it. ASC argues specifically that the evidence established that the security interest and lien given by Ross Barber to Barber & Sons was a fraudulent conveyance.

■ In the case at bar, the cause was submitted to the trial court on the basis of the pleadings, exhibits, and deposition testimony. There was no live testimony presented to the trial court for consideration. Therefore, ASC argues that the court of appeals is entitled to consider its appeal de novo without deference to the judgment of the trial court. In support of this position, ASC cites *Southgate Bank & Trust Co. v. May*, 696 S.W.2d 515 (Mo.App.1985). *Southgate* held that where the facts are derived from the pleadings, stipulations, exhibits, and depositions, no deference is due the trial court's judgment. *Id.* at 519 (citing *MFA Mutual Insurance Co. v. Home Mutual Insurance Co.*, 629 S.W.2d 447, 450 (Mo.App. 1981)). It further held that where credibility of witnesses is not involved, the rule of deference mandated by Rule 73.01(c)(2) is not applicable. *Id.* at 519 (citing *Case v. Universal Underwriters Insurance Co.*, 534 S.W.2d 635, 637 (Mo.App.1976)).

Along with the court in *Southgate*, the court in *MFA Mutual Insurance Co. v. Home Mutual Insurance Co.* relied upon *Case v. Universal Underwriters Insurance Co.* as authority for the holdings referenced above. *MFA Mutual Ins. Co. v. Home Hutual Ins. Co.*, 629 S.W.2d 447, 450 (Mo.App. 1981). As referenced in *Case*, the court considered its review to be de novo. *Case v. Universal Underwriters Ins. Co.*, 534 S.W.2d 635, 636 (Mo.App.1976).

Subsequent to *Case*, the Missouri Supreme Court handed down its landmark opinion in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *Murphy v. Carron* held as follows:

[A]ppellate "review ... as in suits of an equitable nature," as found in Rule 73.01, is construed to mean that the decree or

judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is "against the weight of the evidence" with caution and with a firm belief that the decree or judgment is wrong. The use of the words de novo and clearly erroneous is no longer appropriate in appellate review of cases under Rule 73.01.

*Id.* at 32.

Under the principles as espoused in *Murphy v. Carron*, our review on appeal is not de novo. Rather, we look to determine if there is substantial evidence to support the judgment of the trial court and whether the judgment is against the weight of the evidence. If there is substantial evidence to support the judgment and it is not against the weight of the evidence, the judgment is to be affirmed unless it erroneously declares or applies the law. The cases cited by ASC, *Southgate Bank & Trust Co. v. May*, 696 S.W.2d 515 (Mo.App.1985), *MFA Mutual Insurance Co. v. Home Mutual Insurance Co.*, 629 S.W.2d 447 (Mo.App.1981), and *Case v. Universal Underwriters Insurance Co.*, 534 S.W.2d 635 (Mo.App.1976), to the extent that they might be interpreted to hold to the contrary, are not to be followed.

■ Our review is not de novo as ASC suggests; rather, we review to determine if there was substantial evidence to support the trial court's judgment and whether the judgment was against the weight of the evidence.[1] In determining the sufficiency of the evidence, an appellate court accepts as true the evidence and inferences favorable to the trial court's judgment, disregarding all contrary evidence. *Braeshire Condominium Bd. of Managers v. Brinkmeyer*, 841 S.W.2d 217, 219 (Mo.App.1992). Where findings of fact have not been properly requested and made, all controverted facts are taken in accordance with the result reached at trial. *Id.*

---

1. This was not a case submitted on stipulated facts.

■ As stated under its second point, ASC argues that the judgment of the trial court, finding a lack of fraud in the creation of the security interest and lien by Ross Barber in favor of Barber & Sons, was not supported by substantial evidence and was against the weight of the evidence. We review this question in accordance with the principles set forth in *Murphy v. Carron.*

At the relevant time herein, section 428.-020, RSMo 1986, was in effect and related to fraudulent transfers.[2] Section 428.020, RSMo 1986, provided, in relevant part, as follows:

Every conveyance or assignment in writing, or otherwise, of any estate or interest in ... goods and chattels, ... made or contrived with the intent to hinder, delay or defraud creditors of their lawful actions, damages, forfeitures, debts or demands, ... shall be from henceforth deemed and taken, as against said creditors and purchasers, prior and subsequent, to be clearly and utterly void.

This statute is thoroughly addressed in *Springfield General Osteopathic Hosp. v. West,* 789 S.W.2d 197, 201 (Mo.App.1990) as follows:

To establish a cause of action under this statute the creditor must show a conveyance by the debtor for the purpose of putting his assets beyond the reach of the creditor. *Barnard v. Barnard,* 568 S.W.2d 567, 569[4] (Mo.App.1978). The burden of proof is on the creditor. *Publicity Building Realty Corp. v. Thomann,* 353 Mo. 493, 183 S.W.2d 69, 72[5] (1944). Fraud is never presumed when the transaction may be fairly reconciled with honesty. *Lindell Trust Co. v. Commonwealth Land Title Ins. Co.,* 611 S.W.2d 283, 286[4] (Mo.App. 1980).

However, fraudulent intent is difficult to establish by direct proof, consequently it must be demonstrated by the surrounding facts and circumstances. *Community Federal Savings and Loan Ass'n. v. Boyer,* 710 S.W.2d 332, 334 (Mo.App.1986). The courts have recognized certain circum-

stances as "badges of fraud." *Id.* They include: (1) a conveyance to a spouse or near relative; (2) inadequacy of consideration; (3) transactions different from the usual method of transacting business; (4) transfers in anticipation of suit or execution; (5) retention of possession by the debtor; (6) the transfer of all or nearly all of the debtor's property; (7) insolvency caused by the transfer; and (8) failure to produce rebutting evidence when circumstances surrounding the transfer are suspicious. *Id.* at [2]; *Conrad v. Diehl,* 344 Mo. 811, 129 S.W.2d 870, 877[11] (1939); *Morris v. Holland,* 529 S.W.2d 948, 953[8] (Mo. App.1975).

While none of the badges of fraud existing alone establishes fraud, a concurrence of several of them raises a presumption of fraud. *Community Federal,* 710 S.W.2d at 334[3]; *Cohoon v. Cohoon,* 627 S.W.2d 304, 307[7] (Mo.App.1981).

■ However, the presence of sufficient consideration for a conveyance in most cases defeats an attempt to set it aside as fraudulent as against creditors. The absence of sufficient consideration, on the other hand, makes other circumstantial evidence of fraudulent intent more persuasive. *Mark Twain Kansas City Bank v. Riccardi,* 865 S.W.2d 425, 427 (W.D.Mo.App.1993).

In the case at bar, there was evidence presented to show that Ross Barber does not have any ownership interest in Barber & Sons. Ross Barber's brother, Anthony Barber, owns 100% of the stock of Barber & Sons.

In 1991, Ross Barber received assessments of federal taxes from the Internal Revenue Service totalling $459,529.51. On December 6, 1991, Barber & Sons advanced $459,529.51 on behalf of Ross Barber to the IRS to satisfy Ross Barber's debt to the IRS. The advances were made in the form of four checks issued by Barber & Sons, all made payable to the IRS and totalling $459,529.51. On February 26, 1992, Barber & Sons ad-

---

**2.** Section 428.020, RSMo 1986, was repealed as of August 28, 1992. For the current statutes relating to fraudulent transfers as to creditors, see sections 428.024 and 428.029, RSMo Supp. 1992.

vanced $100,000.00 to Commercial National Bank on behalf of Ross Barber to refinance indebtedness related to a shopping center in which Ross Barber held an interest. On March 18, 1992, Barber & Sons advanced an additional $225,000.00 to Ross Barber's affiliate, Auto Trend, to allow Auto Trend to repay certain bank obligations. As of the March 18, 1992 transaction, Ross Barber owed Barber & Sons a total of $784,529.51.

These loans were memorialized and secured by Barber & Sons and Ross Barber, on or about March 30, 1992, by the execution of promissory notes and a Security Agreement. In exchange for the advances of $784,529.51 by Barber & Sons, Ross Barber executed promissory notes and granted Barber & Sons a security interest in Ross Barber's personal property which included the IRAs held by UMB. Barber & Sons perfected the security interest granted under the Security Agreement on April 1, 1992 by filing Uniform Commercial Code Financing Statements in the Missouri Secretary of State's Office and the Jackson County Recorder of Deed's Office. ASC's lien on the IRAs was not perfected until its Summons of Garnishment and Interrogatories were served on UMB on April 3, 1992.

On the basis of the evidence presented, the transaction between Ross Barber and Barber & Sons may be fairly reconciled with honesty. Barber & Sons advanced money to Ross Barber to allow him to satisfy legitimate debts and in turn Barber & Sons took a security interest in Ross Barber's property. There was no lack of consideration and although the timing of the transactions involved appears suspicious on its face, the evidence presented was sufficient to rebut any indication of fraud. The trial court did not abuse its discretion by so finding.

The judgment of the trial court is affirmed.

All concur.