UNITED SERVICES AUTOMOBILE AS-SOCIATION CASUALTY INSURANCE COMPANY, Plaintiff/Respondent,

v.

Larry Wayne SORRELLS and Ovid Steven Roberts, Defendants/Appellants.

No. 67245.

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 14, 1995.

Jeffrey S. Paul, Clayton, and Steven E. Weir, Union, for appellants.

Robert J. Wulff, Amelung, Wulff & Willbenbrock, St. Louis, for respondent.

AHRENS, Presiding Judge.

In this court tried declaratory judgment action, defendants Larry Sorrells and O. Steven Roberts appeal from the trial court's judgment declaring plaintiff United Services Automobile Association Casualty Insurance Company has no obligations or liabilities to defendants for injuries arising out of a March 18, 1993 incident in which defendant Sorrells sustained a gunshot injury. We affirm.

The evidence supporting the trial court's judgment is as follows: Sorrells and his co-defendant, O. Steven Roberts went to a bar called Dwarfs on the evening of March 17, 1993. Sorrells and Roberts argued at the bar. The two left Dwarfs three or four hours later after having consumed three to four beers each. Roberts drove them back to his house. On the way to Roberts' house Sorrells complained to Roberts that he was driving too slow and warned him to keep the car on the road. Sorrells and Roberts argued about Roberts' driving on the way to Roberts' house and the argument continued after they arrived.

Robert Bennett, who lives across the street from Roberts, saw two men "scuffling around and hollering and ... making a lot of racket" in Roberts' yard around 2:00 a.m. on March 18, 1993. Bennett said the two appeared to be arguing and were using vulgar words; they were "cursing a lot and kind of shoving around on each other." Bennett watched the two men for a minute or so then went into the bathroom. He came out, took a glass into the kitchen and then returned to the bathroom. When he left the bathroom the second time, he noticed the two men were still out in Roberts' yard arguing. He

described their voices as very loud and very vulgar. Bennett said their conduct was not the type of playful conduct you get into with a friend after you have been drinking. He could tell the men were pushing each other, and he saw arms moving but he was not sure if they were actually hitting each other. After returning to bed, Bennett heard "a puff noise" which he now believes was the gun shot. He is unsure when he heard this noise but it was prior to the ambulance arriving at the Brunais house.

After returning to Roberts' house both defendants testified that they watched television. During this time Roberts' handgun came up in conversation. There was some discussion about an emblem on the gun and Roberts retrieved the gun from his bedroom to show the emblem to Sorrells. Roberts took the gun from its holster, knowing it was loaded, and showed it to Sorrells. Then Roberts began pulling the hammer of the gun back and pulling the trigger which in turn released the hammer. Roberts was catching the hammer with his thumb to prevent the gun from firing when he pulled the trigger. Roberts pointed the gun at Sorrells knowing it was loaded. He also had reason to know this particular gun fired much easier than most because the gun had accidentally discharged two weeks earlier when Roberts was cleaning it. At some point while Roberts had the gun out, Sorrells was shot. Sorrells stated that Roberts was only a foot away from him when the gun discharged.

After being shot, Sorrells ran next door to the Brunais' house. The loud noises had awakened Mrs. Brunais and she woke up her husband. When Mr. Brunais heard the doorbell ring, he looked outside, saw Sorrells on his step and Roberts in his own front yard. The two men were yelling and arguing, so Brunais called the police and waited for Roberts to go back into his house before letting Sorrells in. Brunais, who had first aid training in the military, immediately began to stop the bleeding and treat Sorrells for shock. Sorrells told Brunais he and Roberts had been arguing, that Roberts pulled a gun and just shot him "point blank." Brunais also heard Sorrells tell a police officer that he and Roberts had been arguing. Sorrells

later told Officer Rick Bailey following the shooting that there had been an argument between himself and Roberts, Roberts pulled out the handgun, walked toward Sorrells, pointed it at him and then the gun accidentally discharged. Dr. Cassat, the physician who treated Sorrells in the emergency room, testified that his notes on Sorrells' medical history indicate that Sorrells told him "he had been drinking and arguing with a friend and was shot in the shoulder at point blank range."

As a result of the shooting, defendant Sorrells asserted a personal injury claim against defendant Roberts. Pursuant to a homeowner's insurance policy issued by plaintiff U.S.A.A. to defendant Roberts, he requested U.S.A.A. defend him against the personal injury claim and settle or satisfy any judgment against him in that case. The homeowner's insurance policy issued by U.S.A.A. to Roberts contains the following language:

Section II—Exclusion:

1. Coverage E—Personal Liability and Coverage F—Medical Payments to Others do not apply to bodily injury or property damage:

a. which is expected or intended by the insured;

Plaintiff claimed defendant Sorrells' injuries were either intended or expected by defendant Roberts and therefore were not covered by the homeowner's insurance policy.

Plaintiff instituted a declaratory judgment action to determine its obligations, if any, to defendant Roberts under the homeowner's insurance policy. Defendants denied any scuffling or arguing and contended the shooting was purely unintentional and unexpected in that the gun accidentally discharged while Roberts was showing it to Sorrells. However, the court found defendants' version of the facts lacking credibility. The trial court chose, instead, to base its findings of fact on the testimony of other witnesses. After hearing all of the evidence, the trial court found defendants Roberts and Sorrells had argued about Roberts' driving ability during the drive to Roberts' house and that the argument continued after arriving at Roberts' house. Roberts pointed the gun at Sorrells and fired it. Roberts knew the gun

was loaded at the time he retrieved it from his bedroom and he had reason to know the gun fired much easier than most other similar guns. In fact, Sorrells, in his statement to Officer Bailey, said the gun had discharged two weeks prior to the shooting while Roberts was cleaning it in his living room. Accordingly the trial court found the shooting of defendant Sorrells to be an intentional, or at the least, an expected act. The trial court concluded plaintiff had no obligation to defendant Roberts for any liability he may have in connection with the shooting of defendant Sorrells.

Defendants in their appeal assert the court erred in finding Roberts intended or expected Sorrells' injuries because: (1) such finding was not supported by substantial evidence, was against the weight of the evidence and was an erroneous application of the law to the facts; (2) the court is prohibited from inferring intent on the part of the insured; and (3) it was plain error for the court to hold the weight of the evidence was in favor of finding intent or expectation on defendant Roberts' part.

Sorrells also argues for de novo review because he and Roberts did not testify at trial but simply submitted their depositions as evidence. Sorrells contends the circumstances of this case bring it within a recognized exception to the appellate standard of review for judge tried cases established in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

*Murphy* requires an appellate court to sustain the judgment of the trial court "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Id.* In applying the *Murphy* standard, we must review both the law and the evidence of the case, giving due regard to the trial court's opportunity to judge the credibility of witnesses. Rule 73.01(c)(1) and (2).

The appellate court defers to the trial court's findings of fact because the trial court is in a better position to evaluate the credibility of witnesses. *State ex rel. Webster v. Cornelius*, 729 S.W.2d 60, 65 (Mo.App.

1987). However the appellate court is not required to defer to the trial court's findings of fact in a court-tried case on a stipulation of facts, where there is no evidence from which conflicting inferences might be drawn and no question of credibility of witnesses. *State ex rel. White Advertising International v. State Highway Commission of Missouri,* 655 S.W.2d 860, 862 (Mo.App.1983). When a court-tried case is submitted upon stipulations of fact, the only question on appellate review is whether the trial court drew the proper legal conclusions from those facts. *Miskimen v. Kansas City Star Company,* 684 S.W.2d 394, 398 (Mo.App.1984).

▪ Sorrells cites the above cases as authority for de novo review in the instant case. In *Miskimen* and *White* the cases were submitted on stipulations of facts and no conflict in facts existed. To the contrary, there was no stipulation of facts in this case. Defendants and Dr. Cassat testified by deposition. Other witnesses testified in person including Mr. Bennett, Mr. Brunais, and Officer Bailey. Further, there was conflicting evidence to be resolved by the trial court. The primary conflict, as stated previously, is whether Sorrells and Roberts engaged in an argument on the night of Sorrells' shooting. Because conflicting evidence is present in the instant case, and the case was not submitted on a stipulation of facts, *Miskimen* and *White* are inapplicable.

Citing *Bremen Bank and Trust Co. v. Muskopf,* Sorrells argues an exception to *Murphy* exists in all cases "where the facts are derived from the pleadings, stipulations, exhibits, and depositions." *Bremen,* 817 S.W.2d 602, 604 (Mo.App.1991). He contends *Bremen* stands for the proposition that de novo review applies in such cases. See *Id.* at 604. *Bremen,* in turn, cites *Southgate Bank and Trust Co. v. May,* for the same proposition. *Southgate,* 696 S.W.2d 515, 519 (Mo.App.1985).

*Southgate* and *Bremen* are distinguishable from the instant case, however, because the testimony in *Southgate* was "uncontroverted" and the evidence in *Bremen* was "largely undisputed" while there are material factual disputes in the case before us. Additionally, *Southgate* has since been overruled by *Avia-*

*tion Supply Corporation v. R.S.B.I. Aerospace, Inc.,* 868 S.W.2d 118 (Mo.App.1993). In *Aviation Supply,* evidence was submitted on the basis of pleadings, exhibits and depositions with no live testimony offered. *Id.* at 120. Still, our Western District held review was not de novo, and reviewed the case under the *Murphy* standard. *Id.*

▪ Sorrells' first and only point relied on charges the trial court erred because its judgment was "not supported by substantial evidence [and was] against the weight of the evidence." Here, as in *Aviation Supply* our review is not de novo, but under the oft-cited principles of *Murphy v. Carron.* In determining the sufficiency of the evidence, we accept as true the evidence and inferences favorable to the trial court's judgment and disregard all contrary evidence. *Aviation Supply,* 868 S.W.2d at 120.

▪ When bringing a declaratory judgment action requesting the court to find an exclusion from coverage under an insurance policy, the insurer has the burden of establishing that an exclusion to coverage applies. *American Family Mutual Insurance Co. v. Pacchetti,* 808 S.W.2d 369, 370 (Mo. banc 1991). The insurance policy involved in *Pacchetti* contained an exclusion from coverage when bodily injury "is expected or intended by any insured," similar to the exclusion in the U.S.A.A. policy. *Id.* at 370. The Missouri Supreme Court held that in such an instance "[i]t must be shown not only that the insured intended the acts causing the injury, but that the injury was intended or expected from these acts." *Id.*

Although Missouri courts disagree on whether the terms "intended" and "expected" are synonymous or whether they have two distinct meanings, this court, after a thorough examination of the matter, found the terms mean two different things and require differing degrees of proof. *Farm Bureau Town & Country Insurance Co. of Missouri v. Turnbo,* 740 S.W.2d 232, 236 (Mo.App.1987).

"Intend" means the insured desires to cause the consequences of his act or believes the consequences are substantially certain to result. "Expect" means the in-

sured realized or should have realized there was a strong probability the consequences in question would result from his acts. *Id.*

This court has also determined that intent to harm may be "inferred as a matter of law from the nature and character of the act." *Travelers Insurance Co. v. Cole,* 631 S.W.2d 661, 664 (Mo.App.1982). "Intent to harm is inferred if the natural and probable consequences of an act are to produce harm." *Id.*

◼ Defendant Roberts contends that plaintiff is required to show Roberts' *subjective* intent to shoot Sorrells and that such intent may not be inferred from the surrounding circumstances. We believe Roberts has misinterpreted the language used by the Supreme Court in *Pacchetti.* Roberts argues the court "specifically rejected the objective standard for determining the intent of the insured party." Nowhere in the *Pacchetti* opinion does the court prohibit the use of the objective standard. We believe an objective standard is necessary when determining intent and agree with the explanation set forth by our colleagues in the Western District:

> Probing one's state of mind is an elusive task at best. Supplanting an objective standard with a subjective standard for determining whether the act or conduct of an insured is "intentional" or "expected or intended" for purposes of assessing coverage would emasculate apposite policy provisions by making it impossible to preclude coverage for intentional acts or conduct absent admissions by insureds of a specific intent to harm or injure. Human nature augers against any viable expectation of such admissions.

*Truck Insurance Exchange v. Pickering,* 642 S.W.2d 113, 116 (Mo.App.1982).

◼ Sorrells compares the instant case to *Steelman v. Holford,* 765 S.W.2d 372 (Mo. App.1989). Although both cases involve the discharging of firearms while under the influence of alcohol, *Steelman* is distinguishable. There was a great difference in the proximity of the victims to the firearms in the two cases. In *Steelman,* the defendants were driving an open-top jeep while they were intoxicated and were shooting a rifle from the moving jeep. *Id.* at 376. The jeep was traveling behind Steelman's tractor trailer when Steelman was shot, so the defendants were further from the cab of the truck than Roberts was from Sorrells when he was shot. There is evidence defendant Roberts was as close as one foot away from defendant Sorrells when the gun fired. The closer proximity of Sorrells to Roberts' handgun necessarily increased the probability Sorrells would be shot. The Southern District in *Steelman* required the insurance company to prove "that [the insured] realized, or should have realized, that there was a strong probability [the victim] would be shot as a consequence of his acts." *Id.* at 377. While the *Steelman* court held the insurance company did not prove that Steelman's injuries were either expected or intended, because of the factual differences in the two cases, we are able to conclude that Sorrells' injuries were at least "expected", if not "intended." The close proximity of the handgun to Sorrells greatly increased the probability he would be shot. Roberts should have realized there was a strong probability Sorrells might be shot because he knew the gun was loaded and knew of the gun's history of discharging under the slightest pressure.

The trial court's finding that "Sorrells' injury was an intended, or at least expected, result" is supported by substantial evidence and is not against the weight of the evidence. Point denied.

The judgment of the trial court is affirmed.

PUDLOWSKI and GRIMM, JJ., concur.