Mike D. JARRELL, Petitioner–
Respondent,

v.

DIRECTOR OF REVENUE,
Respondent–Appellant.

No. 23803.

Missouri Court of Appeals,
Southern District,
Division One.

March 29, 2001.

Jeremiah W. (Jay) Nixon, Atty. Gen., Amy L. Patton, Asst. Atty. Gen., Jefferson City, for Appellant.

Scott R. Pettit, Aurora, for Respondent.

SHRUM, Judge.

Citing part of Missouri's Implied Consent Law, specifically § 577.041.3, RSMo Cum.Supp.1999, Missouri's Director of Revenue ("Director") revoked the license of Mike D. Jarrell ("Jarrell") to operate a motor vehicle.[1] Director based the revocation on Jarrell's refusal to submit to a chemical test of his breath pursuant to § 577.020.1.

Jarrell petitioned the circuit court for review of Director's decision, per § 577.041.4. After an evidentiary hearing, the court entered a judgment that set aside the revocation and ordered Jarrell's license reinstated. Director appeals. We affirm.

Three prerequisites must be found before a trial court can uphold Director's decision to revoke a person's driving privileges for failure to submit to a chemical test pursuant to § 577.041: (1) the driver was arrested; (2) the arresting officer had reasonable grounds to believe the driver was driving while intoxicated; and (3) the driver refused to submit to a chemical test. *Sutton v. Director of Revenue*, 20 S.W.3d 918, 921[1] (Mo.App.2000); § 577.041.4. If the trial court finds that one of the three requirements has not been met, then the court must reinstate a driver's privileges. *Id.*; § 577.041.5.[2]

---

1. All statutory references are to RSMo Cum. Supp.1999, unless otherwise indicated.

2. We address only the trial court's finding that Jarrell did not refuse to consent to the breathalyzer test as this is dispositive. We express no determination on the correctness of the other findings made by the trial court.

44

Among its findings, the trial court here concluded, "[t]hat [Jarrell] did not refuse to submit to a chemical test." On appeal, Director maintains the judgment setting aside the administrative revocation of Jarrell's license is against the weight of the evidence in that Director proved, *inter alia*, "an uncontroverted prima facie case ... [that] Jarrell refused to submit to a chemical test."[3] However, the premise of this argument, i.e., there was "uncontroverted" evidence regarding Jarrell's refusal, is not supported by the record. As we explain in more detail below, Jarrell put in evidence his sworn affidavit that directly contradicted Director's evidence about his alleged refusal to take the test.

As stated in n. 3, Director's evidence at trial consisted of the Alcohol Influence Report ("AIR") and the arresting officer's narrative report. Director called no witnesses, nor did Jarrell. In the arresting officer's narrative, he wrote that after Jarrell's unsuccessful attempts to contact an attorney, he asked Jarrell to take the breath test. He stated Jarrell refused which he then wrote down on the AIR. However, for the reasons given in n. 3, the officer's AIR report was arguably ambiguous and could be read as contradictory to what he wrote in the narrative. On the other hand, Jarrell placed in evidence his sworn affidavit that stated: "I advised the officer that I would take the chemical test. The officer wrote down on the report that

I refused. Affiant states that he *did not* refuse the chemical test."

■ Faced with such a record, the question is whether the trial court committed reversible error when it implicitly accepted Jarrell's affidavit and rejected the arresting officer's reports to reach its conclusion that Jarrell did not refuse to take the test. Director's argument that this was reversible error includes the following:

"The only 'proof' that Jarrell provided to show he did not refuse to take the BAC test was two conclusory affidavits. In his first affidavit, Jarrell alleges that '[he] did not "refuse" to submit to the chemical test, as such term is defined by statute and case law in the State of Missouri.' Jarrell provides no facts to supports his allegation in his self-serving affidavit. Over a month later, Jarrell files a second affidavit in which he avers, 'I advised the officer that I would take the chemical test. The officer wrote down on the report that I refused.'

. . . .

"Because the evidence consists of [the arresting officer's] Alcohol Influence Report, including the officer's narrative, versus Jarrell's affidavit, the issue becomes one of credibility. In a case submitted upon the written record, such as this case, deference to the trial court regarding credibility of witnesses is not warranted. *Riggin v. Director of Reve-*

3. Arguably, Director never made a *prima facie* case here because the only evidence he adduced was an Alcohol Influence Report ("AIR") and narrative report attached thereto. These documents are, at best, ambiguous. On the AIR form, this question appears: "Having been informed of the reasons for requesting the test[s], will you take the test(s)?" The "yes" and "no" boxes beside this question, which are designed to indicate if Jarrell refused to consent to the test, are *both checked.* Also, there are "arrows" inserted near the "yes" and "no" boxes which

point to two handwritten numbers. This appears to be an effort to record time sequences. Above these entries is a phrase, which in part is illegible, with another time written. The next part of the AIR form reads: "CHEMICAL TEST REFUSAL (OFFICER MUST MARK BOX IF SUBJECT REFUSED TEST)." The box next to this instruction appears to be checked but then blackened out. In addition, some of the words in the typed narrative report cannot be read due to poor copying.

*nue*, 25 S.W.3d 695 (Mo.App. S.D.2000). Jarrell's two self-serving, and at least partially conclusory and inconsistent affidavits, made after his license was revoked, lacks [sic] credibility and should be given no weight by this court. Overcoming a revocation for refusal should not be as simple as the driver providing an affidavit essentially claiming, in conclusory fashion, 'No, I did not refuse, it doesn't matter what the officer said.' Such a result would undermine the purpose of § 577.0941."

■ Preliminarily, we note Director is not consistent in part of his argument. Thus, he characterizes Jarrell's affidavits as "conclusory," "self-serving," "inconsistent," and without factual detail, yet would apparently have this court ignore the fact that the arresting officer's AIR is equally "conclusory" and "self-serving," but even more, is ambiguous. *See* n. 3. As to the officer's narrative report, it has essentially the same amount of detail as does Jarrell's affidavit, although it was factually contradictory thereto. Specifically, the narrative report recites: "I read Jarrell the implied consent section again and then setup [sic] the machine. At the proper time I asked Jarrell to take the test and he stated he would not." We reject Director's suggestion we should treat Jarrell's affidavit as fatally defective because it lacked detail or was conclusory but view the officer's narrative as sufficient.[4] They are essentially equivalent in giving details.

■ With these observations made, Director is correct when he claims appellate courts *do not give any deference* to a trial judge's determination regarding the *credibility of witnesses* in cases submitted solely upon a written record. *See e.g. Riggin*, 25 S.W.3d at 698[5]; *Prozorowski v. Director of Revenue*, 12 S.W.3d 405, 408 (Mo.App.2000)[5]. This rule has evolved for the obvious reason that if witnesses do not appear before a judge, he or she has no opportunity to observe their demeanor nor are they subjected to cross-examination. *Isom v. Director of Revenue*, 705 S.W.2d 116, 117 (Mo.App.1986). On the other hand, the rule of "no deference" regarding "witness credibility" in cases where there are no *live* witnesses does not mean appellate courts are to review such cases de novo or ignore evidence and inferences favorable to the judgment. *See Aviation Supply v. R.S.B.I. Aerospace*, 868 S.W.2d 118, 120 (Mo.App.1993)[3]. The landmark case of *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976) teaches otherwise. There, the Supreme Court of Missouri held:

> "[A]ppellate 'review ... as in suits of an equitable nature,' as found in Rule [84.13(d)(1) ] is construed to mean that the decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong. The use of the words *de novo* and *clearly erroneous* is no longer appropriate in

4. This was not a case where the alleged refusal consisted of the arrestee merely remaining silent and simply not breathing or blowing into the machine, or only vocalizing some sort of qualified or conditional consent or refusal. *See Sutton*, 20 S.W.3d at 923. The record here reflects a claim of clearly verbalized refusal contrasted with a claim of clearly verbalized consent and request to take the test. Under these circumstances, we are not persuaded that the claims of consent or refusal are "conclusory" or fatally lacking in detail.

**46**

appellate review of cases under Rule [84.13(d) ]."

*Id.* at 32[1–3].

■■■ Appellate review of judgments relating to revocation of driving privileges for failure to take a chemical test is governed by *Murphy v. Carron*. *See e.g. Berry v. Director of Revenue*, 885 S.W.2d 326, 328 (Mo.banc 1994); *Calicotte v. Director of Revenue*, 20 S.W.3d 588, 591 (Mo. App.2000). Consequently, our review is not de novo as Director seems to suggest; rather, we review to determine, *inter alia,* if there was substantial evidence to support the trial court's judgment and whether the judgment was against the weight of the evidence. *Calicotte,* 20 S.W.3d at 591. When determining sufficiency of evidence pursuant to the *Murphy v. Carron* standard, appellate courts accept as true the evidence and inferences favorable to the trial court's judgment, disregarding all contrary evidence. *Aviation Supply,* 868 S.W.2d at 120[4]. A trial court's judgment in a § 577.041 revocation case is to be affirmed under any reasonable theory supported by the evidence. *Berry,* 885 S.W.2d at 328[3].

■■■ The *Murphy v. Carron* standard of review and these principles attend even when the facts are derived from pleadings, stipulations, exhibits, depositions, affidavits, or other written materials, i.e., when there are no live witnesses. *Aviation Supply,* 868 S.W.2d at 120. In such instances, appellate courts defer to the *facts*—not witness credibility—as found by the trial court "in reviewing whether there is substantial evidence to support a judgment and determining whether the judgment is against the weight of the evidence." *Keener v. Wilcox Elec. Inc.,* 884 S.W.2d 744, 746 (Mo.App.1994)[9]. Stated otherwise, where facts essential to an ele-

ment of a case are derived from non-live sources and are in conflict, appellate courts give deference to the trial court conclusions about those facts. *Aviation Supply,* 868 S.W.2d at 120.

■■■ Here, the trial judge made a fact-finding that Jarrell did not refuse to take the breath test. This was based on a sworn affidavit by Jarrell claiming he consented to take the test. Contrary to this evidence was an ambiguous AIR report that went unexplained either through live testimony or the narrative report attached thereto. Director had every right to call the arresting officer to the stand to explain the report, but chose not to pursue this right. "[C]aution should be exercised when a suspension case is submitted on the records alone ... submission of a case on the records alone may pose some risks—including the inability to explain discrepancies or to rehabilitate 'witnesses'...." *Tebow v. Director of Revenue,* 921 S.W.2d 110, 113 (Mo.App.1996).

After accepting as true Jarrell's affidavit statement that he did not refuse the test and asked to take it, but ignoring statements to the contrary in the AIR and arresting officer's written narrative, we conclude there is sufficient substantial evidence in this record to support the trial court's reversal of Director's decision. The fact that such evidence is in affidavit form is of no consequence. *Keener,* 884 S.W.2d at 746; *Aviation Supply,* 868 S.W.2d at 120. Such circumstance merely means we defer to the trial court's resolution of the contradictory written *facts* presented. This follows because the written evidence regarding Jarrell's alleged refusal was of the "did" versus "did not" type. Since resolving witness credibility was not an option, the trial court had to choose between two conflicting written versions of

what happened.[5] Under the circumstances, how could this court say the trial court was wrong in selecting one or the other of the contradictory facts regarding Jarrell's alleged refusal to take the test? To ask the question is to show the soundness of *Murphy v. Carron, Keener*, 884 S.W.2d at 746, and *Aviation Supply*, 868 S.W.2d at 120. The trial court's finding "[t]hat [Jarrell] did not refuse to submit to a chemical test" was supported by substantial evidence and is not against the weight of the evidence. Thus, there exists sufficient substantial evidence to support the judgment on a reasonable theory, i.e., that Director did not meet its burden of proof on the element of refusal. The trial court did not err in setting aside the administrative revocation of Jarrell's license and ordering the license reinstated. Point denied.

The judgment is affirmed.

PARRISH, P.J., concurs in separate opinion.

MONTGOMERY, J., concurs.

PARRISH, Presiding Judge, concurring.

I concur. I write separately only to comment on the reliance by the trial court on affidavits of the petitioner, Mike D. Jarrell, in determining whether Mr. Jarrell refused to submit to a chemical test of his breath pursuant to requirements of § 577.020.1, RSMo Cum.Supp.1999.

The Director of Revenue conceded that the affidavits of Mr. Jarrell were evidence in this case. Persons who read the principal opinion in this case should not infer that a party's affidavit concerning issues to be determined by a trial would be admissible evidence in the face of a proper objection.

---

5. We have not ignored *Isom*, 705 S.W.2d 116. There all evidence about probable cause for stopping Isom was presented by stipulation. The parties stipulated the arresting officer, if called, would testify it was Isom's excessive speed that led to the stop. Contrarily, they stipulated Isom would, if called, testify he was not speeding and no probable cause existed for the stop. The western district reversed a judgment favorable to driver. It remanded, saying: "[The] stipulations confronted the court with a disputed element of the case which could only be resolved by introduction of evidence." *Id.* at 118. We find no later case that has followed *Isom*. We also believe *Aviation Supply*, 868 S.W.2d 118, implicitly overruled *Isom*.