Paul E. BEHR, Jr., Plaintiff–Respondent,

v.

BIRD WAY, INC., a Missouri Corporation, et al., Defendants–Appellants.

No. 20018.

Missouri Court of Appeals,
Southern District,
Division One.

May 15, 1996.

Ronald L. Kraft, Kansas City, for appellants.

Loyd Francis, Kimberling City, Robert E. Sharp, Springfield, for respondent.

BARNEY, Judge.

Bird Way, Inc., (Bird Way) appeals from the judgment of the Circuit Court of Stone County, Missouri, setting aside a deed of trust and a deed in lieu of foreclosure to certain tracts of land located in Stone County, Missouri. The deed of trust together with the deed in lieu of foreclosure were conveyances from William R. Danner and Gloria A. Danner (the Danners) to Bird Way. The judgment held that the deed of trust and deed in lieu of foreclosure were fraudulent as to Danners' creditor, Paul E. Behr, Jr., (Plaintiff).[1]

Bird Way presents three points on appeal: that the trial court erred in (1) finding that the transfer of the Stone County property was fraudulent (as to the creditor-Plaintiff herein); (2) ruling that Bird Way was a mere instrumentality or alter ego of the Danners; and (3) excluding witness testimony under § 491.010, RSMo 1994 relating to conversations with the decedent-seller and the Danners when the purchase of the Stone County property took place in 1984.

The trial court made extensive findings of facts and conclusions of law. " 'In court-tried cases conflicts in evidence are for the trial court to resolve and we take the facts in accordance with the results there reached'." *Davis v. Nelson,* 880 S.W.2d 658, 665 (Mo.App.1994). On review of a court-tried case this Court will independently evaluate the trial court's conclusions of law. *Unlimited Equip. Lines, Inc. v. Graphic Arts*

---

1. The Danners are not listed in the pleadings as being parties to this lawsuit. "[W]here the grantor has relinquished all legal interest in the property and the creditor has obtained a judgment against the grantor, the grantor is not even a necessary party to the action to set aside the transfer to hinder, delay or defraud the creditor, since the grantor could not be prejudiced by a determination subjecting [the] property to the payment of his debts and therefore has no interest in the lawsuit." *Tockman v. Shower Doors, Inc.,* 568 S.W.2d 74, 79 (Mo.App.1978).

*Centre, Inc.*, 889 S.W.2d 926, 932 (Mo.App. 1994).

■ In determining the sufficiency of the evidence, an appellate court accepts as true the evidence and inferences favorable to the trial court's judgment, disregarding all contrary evidence. *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 868 S.W.2d 118, 120 (Mo.App.1993). We defer to the factual findings of the trial judge, who is in a superior position to assess credibility. *Graphic Arts Centre*, 889 S.W.2d at 932.

■ The review of a court-tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The judgment of the trial court will be upheld unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 32; *South Side Nat'l Bank v. Winfield Fin. Servs. Corp.*, 783 S.W.2d 140, 141 (Mo. App.1989).

Bird Way was initially incorporated in 1970 by the Danners, who were sole shareholders until February 12, 1989, and members of the board of directors until late 1991. William R. Danner was the president and his wife, Gloria Danner, was the secretary until October 14, 1991, when Bird Way was administratively dissolved by the State of Missouri for failure to pay Missouri Franchise Tax.[2] Essentially Bird Way was a holding company for other corporations controlled by the Danners. These included Dar Mar, Inc., Air Flight Charters, Inc., North Kansas City Electric Co., AG Industrial Sales Corp., and Fabristeel, Inc. Bird Way had no employees or payroll. The Danners' children, Adrian, Daryl and Chere, worked for Bird Way as well as the subsidiary corporations.

On June 26, 1984 Joseph Leroy Schwyhart and another owner conveyed the property in question located in Stone County, Missouri, by warranty deed to the Danners and in turn, on June 29, 1984, the Danners executed a promissory note secured by a deed of trust on the property. The promissory note explicitly provided that the Danners could "transfer[ ] [the property] to immediate family of or to corporation owned by [the Danners]."

Thereafter, on April 4, 1985, the Danners executed their promissory note to Plaintiff in the amount of $210,000.00, on which note the Danners defaulted.

On February 13, 1989, the Danners gifted 18,564 shares of their stock in Bird Way to the Danners' children and their spouses, to grandchildren, and to siblings and their spouses, and 663 shares each to two other persons, followed up by conveyance of the remaining 17,238 shares of stock of the corporation to the same relatives on February 9, 1990. No consideration was received by the Danners for any of these stock transactions.

Plaintiff filed suit against the Danners upon default of the promissory note for $210,000.00, on November 16, 1990, in Case No. CV590–151CC. On January 8, 1991, less than two months after Plaintiff had filed his suit against the Danners, the Danners executed a deed of trust in favor of Bird Way in the amount of $1,200,000.00, together with other security instruments on the Danner's property in Stone County. Significantly, no promissory note was issued evidencing this indebtedness. Further, the trial court found that no money or separate consideration was received by the Danners for the deed of trust.

The trial court further noted that the corporate minutes of Bird Way failed to reflect the amount of money owed Bird Way by the Danners. Neither were there any statements of any accounting of any amount or what actions Bird Way intended to take to collect any amount due from the Danners.

Additionally, the trial court found that the Danners executed " . . . Deeds of Trust and Assignments of Rents . . . to Bird Way, Inc., [sic] on real estate in Johnson County, Kansas and Maricopa County, Arizona, dated October 2, 1991 and December 2, 1991, respectively . . . ."

---

**2.** Pursuant to § 351.486.3, RSMo 1994, when a corporation is administratively dissolved it "continues its corporate existence but may not carry on any business except that necessary to wind up and liquidate its business and affairs . . . ."

On July 29, 1991, Cause No. CV590–151CC was tried and the case was taken under advisement.

On October 17, 1991, before the decision on the foregoing case was rendered, the Danners executed their deed in lieu of foreclosure conveying the Stone County property to Bird Way. Chere Danner, Treasurer of Bird Way testified that no consideration was paid by Bird Way to the Danners for the deed in lieu of foreclosure.

On July 27, 1992, the Plaintiff obtained judgment against the Danners in Case No. CV590–151CC in the amount of $291,529.16.

Two days after entry of the judgment in favor of Plaintiff in Case No. CV590–151CC, on July 29, 1992, the Danners filed their voluntary Chapter 11 Bankruptcy in the United States Bankruptcy Court for the District of Kansas in Case No. 92–21634. A stay order issued by the bankruptcy court prevented Plaintiff from executing on the aforesaid judgment. The court then, on September 16, 1992, dismissed the Chapter 11 Bankruptcy action for failure to appear for the first meeting of creditors, failure to file schedules, and willful failure to abide by orders of the court as required by the Bankruptcy Code.

On September 16, 1992, a creditor of the Danners filed an involuntary bankruptcy action against the Danners but this action was dismissed by the bankruptcy court for improper filing on October 13, 1992, upon motion by Bank America Arizona.

It can be gleaned from the "Findings of Fact" of the United States Bankruptcy Court for the District of Kansas in Case No. 92–21954–7 that the Danners and a "Sneed Trust" had owned property in Maricopa County, Arizona. The bank had made the initial acquisition loan for the property and a subsequent loan to avoid foreclosure by a junior lienholder. There were prolonged efforts to prevent the bank from foreclosing on the property, including the filing of a bankruptcy action by the partnership in Arizona.

The Bankruptcy Court in Kansas dismissed the involuntary petition because the Bankruptcy Court did not authorize the filing of a joint involuntary petition nor could a petition in bankruptcy, involuntary or voluntarily, be initiated against the Danners within 180 days of the original dismissal of their voluntary bankruptcy petition.

In its first point, Bird Way asserts that the trial court erred in finding that the transfer of the Stone County property was fraudulent. A party seeking to have a transaction declared void as fraudulent must prove its case by clear and convincing evidence. *Winfield,* 783 S.W.2d at 143.

The essential elements of a fraudulent conveyance include (1) a conveyance or assignment (2) of goods, chattels, things in action or interest in land (3) with the intent to hinder, delay or defraud creditors.[3] *Cohoon v. Cohoon,* 627 S.W.2d 304, 307 (Mo. App.1981). Because intent is a difficult element to prove, "Missouri courts have recognized that there are certain circumstances referred to as badges of fraud which so frequently attend conveyances to hinder, delay or defraud creditors that they may be employed to determine the presence of fraud." *Id.* at 307; *Aviation Supply,* 868 S.W.2d at 121. The badges of fraud include the following: (1) a conveyance to a spouse or near relative; (2) inadequacy of consideration; (3) transactions different from the usual method of transacting business; (4) transfers in anticipation of suit or execution; (5) retention of possession by the debtor; (6) the transfer of all or nearly all of the debtor's property; (7) insolvency caused by the transfer; and (8) failure to produce rebutting evidence when circumstances surrounding the transfer are suspicious. *Mark Twain Kansas City Bank v. Riccardi,* 865 S.W.2d 425, 427 (Mo.App.1993); *Winfield,* 783 S.W.2d at 143. Although none of the badges alone will establish fraud, the presence of several of the badges will raise a presumption of fraud. *Cohoon,* 627 S.W.2d at 307.

**3.** All statutory references are to RSMo 1986, unless otherwise indicated. Section 428.020 was repealed by the General Assembly, effective August 28, 1992, and the Uniform Fraudulent Transfer Act, §§ 428.005 to 428.059, RSMo 1992 was enacted. Section 428.020 is applicable here as the alleged fraudulent transfers took place in 1991, and the UFTA does not have retroactive effect. See *Aviation Supply,* 868 S.W.2d at 121.

The transfer of the Stone County property by a deed in lieu of foreclosure and the granting of the deed of trust by the Danners to ostensibly secure a $1,200,000.00 indebtedness to Bird Way display several of the badges of fraud.

In proof of the first badge of fraud, the evidence shows that although the deed of trust ostensibly encumbering the Stone County property, dated January 8, 1991, was executed by the Danners to secure an indebtedness to Bird Way, the transfer was in favor of a corporation controlled by the relatives of the Danners. It is these same relatives that received their shares of stock in Bird Way without rendering consideration in return. Likewise, when the deed in lieu of foreclosure was conveyed to Bird Way the Danners' relatives were the implicit beneficiaries. The first badge, showing a transfer of properties to close relatives has been proven. *See, e.g., Harmony Unlimited, Inc. v. Chivetta,* 743 S.W.2d 884 (Mo.App.1987).

The second badge of fraud is inadequate consideration. There was evidence that the amount of consideration was inadequate. The explanation given by Bird Way was that the consideration for the Danners executing a Deed of Trust securing an indebtedness of $1,200,000.00, was that this sum had previously been contributed by Bird Way and other subsidiary corporations in improving the Stone County property. This was supposedly evidenced by a number of checks that were written by Bird Way and the various subsidiaries of Bird Way totaling $1,723,553.95. The trial court specifically found and held, however, that "[T]hese payments were made from bank accounts owned and controlled by the Danners as total owners of the assets of Bird–Way, Inc. [sic] and the other corporations issuing checks for payment and the total amount of these checks did not approach the stated consideration of $1,200,000.00 as set forth in the Deed of Trust from Danners to Bird–Way, Inc. [sic]." [4]

The third badge of fraud involved transactions that appear to be performed in a manner contrary to the usual course of business. Testimony of Chere Danner revealed that the deed of trust encumbering the Stone

County property was executed on January 8, 1991, because the Danners had previously borrowed $1,200,000.00 from Bird Way and it was now due and payable. This amount was arrived at from an accountant's worksheet. No promissory note executed by the Danners was presented during discovery proceedings or during the trial itself that stated when the supposed loan was due. It can only be concluded that Bird Way "loaned" this money to the Danners with no promise of repayment or agreement of terms. Bird Way contends that the canceled checks issued for payments and improvements on the property show that the debt existed. Even if this were so, this is not the customary way of doing business. Good business practice generally dictates that when any corporation lends $1,200,000.00 to an individual, it would certainly have the indebtedness properly evidenced and documented.

Additionally, the property was purchased on June 29, 1984. The warranty deed, deed of trust and promissory note all designate the purchasers as the Danners, not Bird Way. Bird Way, however, provided all the closing funds for the purchase as evidenced by a series of five separate checks. Adrian Danner attempted to testify at trial that the reason the purchase was structured in this manner was because Schwyhart, the seller, did not want a corporation listed on any of these documents. This testimony was disallowed under § 491.010, the so-called Dead Man's Statute. Even had this testimony been allowed, it still does not explain why the property was not then immediately or, shortly thereafter, transferred to Bird Way, if the corporation was intended as the true benefactor of the transaction. The promissory note executed in 1984 at the time of the Stone County property purchase specifically stated that the non-assignment provisions, "shall not apply to transfers to immediate family of or to corporation owned by the undersigned." There was nothing to prevent the transfer of the property to Bird Way immediately after its purchase. Chere Danner said that she did not realize that there was no documentation showing that Bird Way was the "true owner" of the Stone

4. No checks were included as exhibits for this    Court to review.

County property until she became acting President of Bird Way. However, Chere Danner was listed as Treasurer of Bird Way on all of the Secretary of State filings from the time of incorporation of Bird Way. The explanation that the omission was overlooked until the time that the Plaintiff filed his suit appears paultry and insufficient.

The fourth badge of fraud is transfer in anticipation of litigation. This is clearly evidenced by the sequence of events. Plaintiff filed his action to collect on his promissory note in November, 1990. Less than two months later, on January 8, 1991, the Danners executed the deed of trust encumbering their Stone County property. From July 29, 1991, through August 26, 1991, the litigation between Plaintiff and the Danners took place. On October 17, 1991, the Danners executed their deed in lieu of foreclosure on the Stone County property, conveying the property to Bird Way, thus putting out of Plaintiff's immediate reach any possibility of executing on the property. On July 27, 1992 judgment was entered against the Danners in favor of Plaintiff on the promissory note. In addition, other deeds of trust and assignments of rents were executed by the Danners to Bird Way on other properties owned by the Danners.[5] The sequence of events certainly suggests that the transfer of property was being performed to evade a creditor.

The fifth badge of fraud, retention of possession by the debtor, was present in this case. The trial court found that it was unusual for the Danners to have divested themselves of all the stocks and assets of Bird Way, particularly without consideration and particularly where the evidence showed that they were retiring. The evidence shows that the Danners were not in a position to pay a sizeable judgment obtained by the Plaintiff against them since Plaintiff had to bring suit against the Danners for the payment. The evidence shows that the Danners were involved in at least one voluntary bankruptcy wherein they were seeking a reorganization of their debts. This factor alone denotes

insolvency. Additionally, bankruptcy records showed them to be involved in a joint-venture indebtedness to the Bank America Arizona, which debt had not been paid. Therefore, the transfer of assets worth at least $1,200,-000.00 to their relatives under these circumstances strongly suggests an ability on their part to continue to possess the assets of Bird Way through the use of their relatives. Additionally, the Danners continued in the management of Bird Way until June of 1991, two years from the time of divestiture of their stock. They would also periodically appear at some of the meetings of the shareholders and board of directors of Bird Way.

The sixth badge, transfer of nearly all of the debtor's property, in the context of this case was the most difficult to prove, particularly when the Danners did not testify at trial. However, the fact that the Danners were unable to pay Plaintiff on their promissory note to him, coupled with the fact that the Danners went into voluntary bankruptcy to reorganize their debts, evidences that the deed in lieu of foreclosure of the Stone County property was a transfer of a significant asset held by the Danners. Further, as already mentioned, there were two other parcels of property in Kansas and Arizona that were encumbered by deed of trust conveyances by the Danners during the time between the filing of Plaintiff's suit and when judgment was entered in favor of Plaintiff. Both encumbrances were made in favor of Bird Way. Further, by gifting all their shares of stock in Bird Way to their relatives and friends, their interests in all subsidiary corporations were also divested. "When a voluntary conveyance without consideration is shown, the party attacking the transfer makes a prima facie case and the burden of going forward with evidence to show that the conveyance was not fraudulent, including the fact that the grantor was not insolvent at the time of the conveyance, or was rendered insolvent by it, passes to the party who received the conveyance." *Tockman*, 568 S.W.2d at 78–79. Therefore, it was incumbent upon Bird Way to show proof that the

---

5. On October 2, 1991, a Deed of Trust was executed on property located in Johnson County, Kansas, and on December 2, 1991, a Deed of Trust was executed on land in Maricopa County, Arizona.

transfer by the Danners was not a transfer of a significant amount of their properties, so as to show they were not rendered insolvent by the transfer. Bird Way did not meet this burden of proof. Instead, it focused its presentation on a showing that the transfer by the Danners was for an ostensible prior indebtedness owed to Bird Way. Nowhere in Bird Way's presentation of evidence were the assets and liabilities of the Danners significantly explained. The attempted explanation by Chere Danner was generalized and equivocal. It can, therefore, be concluded that the transfer of the Stone County property by the Danners to Bird Way, consisted of a significant amount of the properties owned by the Danners.

Next, insolvency caused by the transfer is a badge of fraud. It has been partially discussed heretofore and with specific reference to the sixth badge of fraud. It is further noted that the deed in lieu of foreclosure specifically states that the Danners were in default as to payment under the deed of trust securing an indebtedness in the face amount of $1,200,000.00. It was after the transfer of the Stone County property that the Danners filed a voluntary Chapter 11 bankruptcy proceeding. Necessarily this denotes insolvency because there is a request for the assistance of the bankruptcy court in reorganizing the indebtedness of the petitioner(s). The bankruptcy proceeding was dismissed for failure to file schedules, failure to abide by the orders of the court and failure to attend bankruptcy court meetings, and not because there was a finding that the Danners did not belong in bankruptcy. When the voluntary petition was filed, and thereafter dismissed, another creditor of the Danners attempted to file an involuntary petition against the Danners. That petition was, in turn, dismissed for improper filing at the behest of Bank America Arizona, yet another creditor of the Danners, as shown by the exhibits in this case.

Finally, the last badge of fraud is the failure to produce rebutting evidence when the circumstances surrounding the transfer are suspicious. The salient fact is that there was little credible and independent evidence showing that the Danners were to act other than as owners in the original purchase of the Stone County land from Mr. Schwyhart, save for the documents created by the Danner family and checks relating to certain contributions by subsidiary corporations of Bird Way on the Stone County property. Thus, while there was evidence presented by the representatives of Bird Way, attempting to refute the suspicions surrounding the transfer of the Stone County property, the trial judge found it less than credible. As stated in the trial court's findings, "[t]he Court must note that nearly all of the evidence presented by Defendant Bird Way, Inc. was prepared, signed and created by [the Danners], Chere Danner (daughter) and Darryl Danner (son).... The evidence presented by the defendant was all created by a member of the Danner family."

In considering the sufficiency of the evidence at trial the trial court was entitled to accept or reject all, part or none of any witness' testimony. *Wates v. Joerger,* 907 S.W.2d 294, 297 (Mo.App.1995). On review, "due regard shall be given to the opportunity of the trial court to have judged the credibility of witnesses." Rule 73.01(c)(2) Missouri Rules of Civil Procedure (1996). The trial court concluded by remarking that: "This court has rarely had a case in which the equities so overwhelmingly favored one side as they in this case favor plaintiff...." Point one is denied.

In review of point two herein, we find that point one is dispositive of the issue relating to the fraudulent transfer of properties by the Danners to Bird Way. Point two is now rendered moot and need not be addressed.

In its third point, Bird Way asserts in its brief that the trial judge erred in excluding the testimony of Adrian Danner as to statements made by Joseph Schwyhart, deceased, regarding the original purchase of the Stone County property in 1984.

It should first be noted that prejudicial or reversible error in the admission or rejection of evidence is not an issue on appeal in any case tried before a judge without a jury. *City of Town and Country v. St. Louis County,* 657 S.W.2d 598, 608 (Mo. banc 1983); *Eagle v. Swanger,* 787 S.W.2d 806, 808 (Mo.

App.1990); *Iota Mgmt. Corp. v. Boulevard Inv. Co.*, 731 S.W.2d 399, 416 (Mo.App.1987).

■ Secondly, we note no offer of proof was made by Bird Way's counsel relative to the conversations surrounding the 1984 transfer of the Stone County property. Generally, an appellate court is not compelled to review excluded evidence without a specific and definitive offer of proof. *Frank v. Envtl. Sanitation Mgmt., Inc.*, 687 S.W.2d 876, 883 (Mo. banc 1985). We are, however, able to discern from the record the substance of the evidence that Bird Way attempted to elicit and we will address ourselves to Bird Way's third point. In doing so, it is not necessary to address the applicability of § 491.010.

This Court determines that the apparent purpose of Adrian Danner's testimony was to show by Mr. Schwyhart's statements that Bird Way and not the Danners were to be the actual, intended owners of the Stone County property, although the Danners were the titled owners. If this were so, however, the property could have been transferred immediately after the transaction was concluded, or shortly thereafter, since by the clear terms of the promissory note there was a provision that allowed transfer of the Stone County property either to the immediate family of the Danners or to a corporation owned by the Danners. Therefore, Mr. Schwyhart's purported statements, at the time of the 1984 transfer, that he did not want a corporation listed on the deed of trust or promissory note is irrelevant. His statements would still not explain why the Danners failed to transfer the Stone County property until some seven years later, under highly suspicious circumstances previously noted herein. Point three is denied.

The judgment of the trial court is affirmed.

MONTGOMERY, P.J., and GARRISON, J., concur.