Ronald J. FISCHER, Appellant,

v.

Donald H. BRANCATO, et al., Respondents.

No. ED 83408.

Missouri Court of Appeals, Eastern District, Division Four.

Aug. 24, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 6, 2004.

Application for Transfer Denied Nov. 23, 2004.

David M. Heimos, Clayton, MO, for appellant.

Thomas A. Connelly, St. Louis, MO, for respondent.

BOOKER T. SHAW, Presiding Judge.

Appellant Ronald J. Fischer ("Creditor") appeals from the trial court's judgment in favor of Respondents Donald H. Brancato ("Debtor"), Georgia D. Brancato ("Wife"), Donald H. Brancato, Inc. ("DHBI") and North County Orthopedics, Inc. ("NCOI") on his petition for civil conspiracy to engage in a fraudulent conveyance and civil conspiracy to tortiously interfere with his judgment lien. Creditor argues the trial court erred in holding Creditor failed to prove a fraudulent transfer by Debtor under the Missouri Uniform Fraudulent Transfer Act, Section 428.005, *et seq.*, RSMo 2000 [1] ("MUFTA"). We agree.

On February 2, 1996, Creditor obtained a judgment in the amount of $165,525.64 against Debtor in the City of St. Louis Circuit Court for damages related to a previous partnership agreement. Debtor has not paid any money to Creditor toward this judgment. In March 1999, Creditor filed a petition for relief under MUFTA in the Circuit Court of St. Louis County alleging that Debtor fraudulently transferred certain real and personal property into various trusts and that Debtor received payments totaling $24,000 from DHBI. Creditor specifically named the following parties as defendants in that lawsuit: Debtor, Wife, Brancato Properties, L.P., Brancato Family Trust, Brancato Family Trust Properties, Inc., DHBI, NCOI, Donald H. Brancato Pension Plan & Trust and Donald H. Brancato, Inc. Profit Sharing Plan & Trust. Debtor and the other defendants filed a motion for summary judgment that the trial court granted on August 9, 1999. The trial court, however, also specifically stated "[i]t is the judgment and order of the court that facts exist which preclude summary judgment as a matter of law on plaintiff's claim in regard to fees for the professional services of [Debtor]." On July 26, 2000, Creditor dismissed this lawsuit without prejudice.

Creditor subsequently filed the present lawsuit on June 4, 2001, alleging a civil conspiracy to engage in a fraudulent conveyance and civil conspiracy to tortiously interfere with his judgment lien. Creditor

---

1. All statutory references are to RSMo 2000 unless otherwise indicated.

specifically alleged in his petition as follows:

9. That with an intent to hinder, delay and defraud [Creditor], of the obligations owed him under said [j]udgment by [Debtor], [Debtor], [Wife], [DHBI], a Missouri corporation, and [NCOI], a Missouri corporation, have participated, and continue to participate, by a meeting of the minds, in a civil conspiracy, the purpose of which is to fraudulently convey to [d]efendants, Wife, [DHBI], a Missouri corporation, and [NCOI], a Missouri corporation, [Debtor's] assets, including his personal services and income, for which [Debtor] has received and continues to receive inadequate consideration, thereby making [Debtor] "judgment proof" and preventing [Creditor] from collecting on the obligations owed him under said [j]udgment by [Debtor].

10. That all of the aforesaid [d]efendants have and continue to knowingly participate in the civil conspiracy involving the aforesaid fraudulent conveyance scheme and have benefited from it.

This case was tried before a judge in equity on November 6, 7, and 8, 2002. In its Findings of Fact, Conclusions of Law and Judgment, the trial court specifically found:

26. Since shortly after entry of [j]udgment against him on February 2, 1996, [Debtor] has not received any income or other remuneration, the intent and effect of which is to make him "judgment

proof" and to prevent [Creditor] from collecting on the [j]udgment.

27. From the evidence presented it is clear that the [d]efendants have gone to great lengths to divert [Debtor's] earnings from his medical practice through related corporate entities and finally to [Wife]. The diversion of this income has had the effect of preventing [Creditor] from executing on his judgment of February 2, 1996 against [Debtor].

 Despite these factual findings in favor of Creditor, the trial court stated in its judgment that it "must reluctantly agree and find[ ] that there is no proof of a transfer made directly by [Debtor] . . . and that this failure defeats liability under [M]UFTA." In its judgment, the trial court additionally sustained Debtor's objection that Creditor failed to properly plead that he was seeking to pierce the corporate veil of DHBI and NCOI. Debtor claimed "unfair surprise" and "[h]aving sustained that objection at trial, the [c]ourt must now conclude that [Creditor] cannot be granted the remedy of 'piercing the corporate veil.'" The trial court also held that "[m]aking [DHBI] or [NCOI] the 'alter egos' of [Debtor] was not sufficiently demonstrated by the facts adduced at trial, and the [c]ourt must reject this theory, which was not pleaded or tried by consent."[2] Creditor subsequently filed a motion for reconsideration and to amend the judgment, which the trial court overruled. This appeal follows.

**2.** The court also appears to have erroneously stated in its judgment that the "defendants' arguments regarding *res judicata* and collateral estoppel are *moot in light of the [c]ourt's conclusions of law as outlined above.*" In light of this statement, Debtor contends in his brief on appeal that if we reverse this case, we should remand it back to the trial court to rule on the issues of *res judicata* and claim preclusion. We disagree. A remand on these

issues is unnecessary as the trial court already ruled on these issues when it denied Debtor's motion for summary judgment and proceeded to trial in this case. It is unclear why the trial court stated in its judgment that these motions were then moot. Regardless, we will not remand the case back to the trial court on these issues as we find the trial court's ruling on the summary judgment motion is clear and correct.

■ On appeal, we will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law. *Behr v. Bird Way, Inc.*, 923 S.W.2d 470, 471 (Mo. App. S.D.1996).

■ In his only point on appeal, Creditor argues the trial court erred in holding that Creditor failed to prove a fraudulent transfer by Debtor and that this failure defeated liability under MUFTA. Creditor argues that the trial court failed to recognize that DHBI and NCOI are under the complete dominion and control of Debtor and that these corporations were used by Debtor to fraudulently convey to Wife all of the income he received from his professional services as an orthopedic surgeon. Creditor contends that the trial court, sitting as a court of equity, has the power to impose against all of the defendants his judgment against Debtor. We reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

■ Creditor's two-count petition against Debtor, Wife, DHBI and NCOI alleges all of these defendants conspired to engage in a fraudulent conveyance and to tortiously interfere with his judgment lien. A civil conspiracy is an agreement or understanding between two or more persons to do an unlawful act, or to use unlawful means to do an act which is lawful. *Trimble v. Pracna*, 51 S.W.3d 481, 500 (Mo.App. S.D.2001). It is not a cause of action in and of itself, but rather, it acts to hold the conspirators jointly and severally liable for the underlying act. *Id.* at 501. Here, Creditor alleged the underlying wrongful act is the defendants' "intent to hinder, delay and defraud [Creditor] of the obligations owed him under [the February 2, 1996] [j]udgment," by fraudulently conveying Debtor's assets, including his personal services and income such that Debtor is "judgment proof."

Section 428.024.1 of MUFTA provides:

1. A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) With actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(a) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(b) Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

Actual intent may be determined by considering, among other factors, whether:

(1) The transfer or obligation was to an insider;

(2) The debtor retained possession or control of the property transferred after the transfer;

(3) The transfer or obligation was disclosed or concealed;

(4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) The transfer was of substantially all the debtor's assets;

(6) The debtor absconded;

(7) The debtor removed or concealed assets;

(8) The value of the consideration received by the debtor was reasonably

equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Section 428.024.2.

In addition, Section 428.009(7) of MUFTA defines "insider" as "[a] relative of the debtor or of a general partner of the debtor; or ... [a] corporation of which the debtor is a director, officer or person in control." A "transfer" is also defined under MUFTA as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." Section 428.009(12).

 The essential elements of a fraudulent transfer include the conveyance or assignment of goods or chattels with the intent to hinder, delay or defraud creditors. *Behr*, 923 S.W.2d at 473. Because intent is difficult to prove, courts have recognized certain "badges of fraud" to determine if a conveyance is fraudulent as to a creditor. *Id.* These "badges of fraud" include:

(1) a conveyance to a spouse or near relative; (2) inadequacy of consideration; (3) transactions different from the usual method of transacting business; (4) transfers in anticipation of suit or execution; (5) retention of possession by the debtor; (6) the transfer of all or nearly all of the debtor's property; (7) insolvency caused by the transfer; and (8) failure to produce rebutting evidence when circumstances surrounding the transfer are suspicious.

*Id.* While none of these badges alone is sufficient to establish fraud, a presumption of fraud arises if several are present. *Id.*

Here, Creditor specifically pleaded that Debtor "with an intent to hinder, delay and defraud" Creditor of his obligations under the February 1996 judgment, along with Wife, DHBI and NCOI, "have participated, and continue to participate, by a meeting of the minds, in a civil conspiracy, the purpose of which is to fraudulently convey to" Wife, DHBI and NCOI, Debtor's assets, "including his personal services and income, for which [Debtor] has received and continues to receive inadequate consideration, thereby making [Debtor] 'judgment proof' and preventing Creditor from collecting on the obligations owed him under said [j]udgment by [Debtor]." This conveyance to NCOI, DHBI and Wife of all of the income Debtor would have earned in return for his professional services rendered as an orthopedic surgeon began shortly after the entry of judgment against Debtor on February 2, 1996. Creditor proved this fraudulent transfer by overwhelming and convincing evidence at trial.

The evidence at trial reflected the following relevant facts. Debtor is the only medical doctor involved in or employed by NCOI, a medical practice, and the only medical professional who performs surgeries and other medical procedures for NCOI. NCOI pays DHBI to provide management services for it. Debtor has primarily been the only officer and director of NCOI and DHBI. Since shortly after Creditor obtained his judgment against Debtor in February 1996, Debtor has received no wages for his professional

services as an orthopedic surgeon, but rather all of the wages earned and received as a result of Debtor's professional services as an orthopedic surgeon were paid ultimately to Wife.

■ The trial court agreed with Creditor that the "[d]efendants have gone to great lengths to divert [Debtor's] earnings from his medical practice through related corporate entities and finally to [Wife]. The diversion of this income has had the effect of preventing Creditor from executing on his [j]udgment of February 2, 1996." However, it appears the court did not recognize DHBI and NCOI as being under the complete control and dominion of Debtor, who used these entities to fraudulently convey to Wife all of the income he would have received for his professional services as an orthopedic surgeon. Rather, the court reasoned as a matter of law that Creditor could not succeed in his cause of action because he failed to plead specifically the theory of piercing the corporate veil or alter ego. We disagree with the trial court and find that such pleadings were not necessary for it to grant Creditor relief under MUFTA.

■ Creditor's petition requests the trial court to impose against all of the defendants Creditor's prior 1996 judgment against Debtor, but it also requests from the trial court the following relief: "(b) Voiding the transfers of all real and/or personal property and/or monies from Defendant, [Debtor], to any of the other [d]efendants as may be necessary to satisfy [Creditor's] [j]udgment. . . ."

Specifically, Section 428.039.1 of MUFTA provides the following remedies to creditors seeking relief:

(1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;

(2) An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by applicable laws of this state;

(3) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure,

(a) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

(b) Appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

(c) Any other relief the circumstances may require.

2. If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds.

Because Creditor sufficiently pleaded and tried his cause of action for conspiracy to engage in a fraudulent conveyance under MUFTA, he is entitled to the relief it provides, regardless of whether he pleaded piercing the corporate veil or alter ego as separate causes of action. It is not necessary to hold the other defendants liable for Debtor's debt in order to void the transfers of Debtor's income to DHBI, NCOI and/or Wife such that Creditor could be permitted to collect his judgment. *See Epperson, et al. v. Entertainment Express, Inc., et al.,* 242 F.3d 100, 107 (2nd Cir. 2001) (finding that it was within the district court's subject matter jurisdiction to void the debtor's fraudulent conveyances to other corporations and individual in order to ensure the creditor's collectibility of his judgment where creditor did not plead piercing of the corporate veil or alter ego); *Thomas, Head and Greisen Employees Trust, et al. v. Buster, et al.,* 95 F.3d 1449, 1454–55 (9th Cir.1996), *cert. denied, Bust-*

er, et al. v. Thomas, Head and Greisen Employees Trust, et al., 520 U.S. 1116, 117 S.Ct. 1247, 137 L.Ed.2d 328 (1997), (distinguishing a creditor's fraudulent conveyance claim which seeks to disgorge from fraudulent transferees property debtor wrongfully transferred versus a claim seeking to pierce the corporate veil which would hold parties liable for the underlying judgment debtor is seeking to collect).

It is absolutely apparent from Creditor's petition, which was supported by overwhelming evidence at trial, that Debtor and Wife conspired to fraudulently convey, through the use of the corporate defendants DHBI and NCOI, the income Debtor would have received for his professional services as an orthopedic surgeon. Debtor did this "with an intent to hinder, delay and defraud" Creditor of his obligations under the February 1996 judgment. As such, all of the income Debtor would have earned for his professional services as an orthopedic surgeon in his medical practice since Creditor obtained the February 2, 1996 judgment, which we find was fraudulently conveyed to Wife, DHBI and/or NCOI, shall be retransferred back to Debtor personally such that Creditor is able to collect his judgment from that income.

We reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

LAWRENCE G. CRAHAN and PATRICIA L. COHEN, JJ., Concur.