MARK TWAIN KANSAS CITY
BANK, Respondent,

v.

Gerald J. RICCARDI, Appellant.

No. WD 46410.

Missouri Court of Appeals,
Western District.

Nov. 23, 1993.

Laura McConwell, Overland Park, KS, Michael J. Messina, Kansas City, for appellant.

Martha A. Halvordson, Kansas City, for respondent.

Before KENNEDY, P.J., and BERREY and SPINDEN, JJ.

KENNEDY, Presiding Judge.

The trial court set aside, as fraudulent as against creditors, Southview Real Estate Company's conveyance to defendant Gerald J. Riccardi of a one-eighth interest in a tract of real estate located at 7900 Wornall Road in Kansas City. Section 428.020, RSMo

1986.[1] As a part of its decree, the court quieted title to the real estate in Mark Twain Kansas City Bank, which had purchased the same at an execution sale after the conveyance. Defendant appeals. Affirmed.

The creditor and plaintiff, Mark Twain Kansas City Bank, had a judgment in excess of $950,000.00 against two corporations, Southview Ford and Southview Real Estate, and also against individuals James Riccardi, Sr., and his wife, Beverly Riccardi. James Riccardi, Sr., and Beverly Riccardi owned all the stock of the two corporations. The Mark Twain judgment was for the deficiency on a promissory note after foreclosure of security. The judgment was a default judgment, the defendants not having appeared. It was entered on May 28, 1991. The Wornall Road property which was conveyed to Gerald J. Riccardi, the conveyance of which is sought to be set aside, was owned by Southview Real Estate. Southview had earlier, before any of the events involved in this case, received title to the real estate from James Riccardi, Sr., without consideration running from Southview to James Riccardi, Sr. Southview Real Estate was a vehicle for holding title to James Riccardi, Sr.'s real estate. The real estate had been inherited by James Riccardi, Sr. James Riccardi, Sr., is the father of Gerald J. Riccardi.

The conveyance of the Wornall Road property to Gerald J. Riccardi was dated April 29, 1991. This was 31 days after service of process to James Riccardi, Sr., and his wife, and 33 days after service upon Southview Real Estate and Southview Ford. The conveyance was made 29 days before the rendition of the default judgment.

■ In order to set aside a conveyance as being in fraud of creditors, it must be shown that the conveyance was made with an intent to hinder, delay or defraud creditors. *Community Federal Sav. & Loan Ass'n v. Boyer*, 710 S.W.2d 332, 334 (Mo.App.1986). In determining the existence of such intent, courts have recognized certain "badges of fraud." *Id.* These "badges of fraud" include:

(1) a conveyance to a spouse or near relative;

(2) inadequacy of consideration;

(3) a transaction different from the usual method of transacting business;

(4) transfers in anticipation of suit or execution;

(5) retention of possession by the debtor;

(6) the transfer of all or nearly all of the debtor's property;

(7) insolvency caused by the transfer; and

(8) failure to produce rebutting evidence when circumstances surrounding the transfer are suspicious.

*Id.* at 334.

■ The giving and the receipt of sufficient consideration is a foundational inquiry when a conveyance is sought to be set aside as fraudulent as against creditors. The presence of sufficient consideration for a conveyance would in most cases defeat an attempt to set it aside as fraudulent as against creditors. The absence of sufficient consideration, on the other hand, makes the chancellor more hospitable to other circumstantial evidence of the grantor's fraudulent intent. *See, e.g., Florida Coast Bank v. Hines*, 646 S.W.2d 110, 118 (Mo.App.1983).

■ In this case, it is admitted that Gerald J. Riccardi gave no concurrent consideration for the conveyance to himself of the Wornall Road property, either directly to Southview Real Estate or to anyone else. Gerald J. Riccardi claims, however, that his father, James Riccardi, Sr., conveyed the property to him in partial satisfaction of a debt owed to him for services in the employment of Southview Ford. He claims he worked for Southview Ford for five years at a salary of $25,000 less per year than the salary of his older brother and that he was induced to do this by his father's promise to make up the difference. By the time he received the conveyance of the Wornall Road property, his father's indebtedness to him had accumulated to $125,000. His position is supported by the testimony of James Riccardi, Sr.

---

1. Section 428.020, RSMo was repealed in 1992. Missouri has adopted, with slight variations, the Uniform Fraudulent Transfer Act, sections 428.005 to 428.059.

It is well-settled that if a debtor owes two creditors, he may prefer the one over the other, even though he may thus place himself in the position of being unable to satisfy the claims of the second creditor. *See, Kinsella v. Gibson,* 307 S.W.2d 491, 494 (Mo.1957). Defendant Gerald J. Riccardi appeals to this rule, claiming his father, in debt both to him and to Mark Twain, only preferred him over Mark Twain, which his father had every right to do.

The difficulty with Gerald J. Riccardi's position is that the trial court, as shown by its judgment, did not believe the testimony supporting Gerald J. Riccardi's defense that he received the real estate in payment, or partial payment, of James Riccardi, Sr.'s debt to him.

■ If we put aside the exculpatory explanation offered by the Riccardis, as the trial court had a right to do, and evidently did do,[2] we are left with a conveyance which bore several badges of fraud. First, it was a conveyance made by the debtor father who was facing a lawsuit that would result in a judgment in favor of Mark Twain against both himself and Southview Real Estate in excess of $950,000.00. *See, e.g., Allison v. Mildred,* 307 S.W.2d 447, 454 (Mo.1957) (conveyance made to grantor's close relatives while suit was pending against grantor was indication that he intended to hinder, delay or defraud his creditors). The judgment would be rendered within 29 days after the conveyance upon the default of the father and Southview Real Estate. The real estate so conveyed was the only property upon which execution might be levied by Mark Twain for the collection of its judgment. *See, e.g., Adams v. Richardson,* 337 S.W.2d 911, 917 (Mo.1960) (voluntary conveyance that included so much of debtor's property that it left him without means to pay his debts established intent to hinder, delay or defraud his creditors). As such, its conveyance to Gerald J. Riccardi would denude the creditor of property and the judgment credi-

tor would thereby be hindered and delayed in the collection of its judgment. In addition, the property was conveyed to a close relative of the debtor grantor. *See, e.g., Harmony Unlimited, Inc. v. Chivetta,* 743 S.W.2d 884, 886 (Mo.App.1987) (transfer made between parent and child coupled with other suspicious circumstances was an indication of fraud).

■ Gerald claims the court erred in finding that he had notice of the Mark Twain lawsuit when he accepted transfer of the real estate from Southview. The trial court made this inference on the basis that Gerald was an employee of Southview Ford. The inference is rather a tenuous one, to be sure, but we do not need to decide if the evidence is sufficient to support it. Gerald's knowledge of the Mark Twain lawsuit is not essential to the court's judgment vacating the conveyance, where (as the trial court found upon disputed evidence) Gerald gave no consideration for the conveyance. It is the grantor's intent that is the subject of inquiry. The grantee's knowledge might in some cases be relevant to the issue of the grantor's intent, but grantee's knowledge or notice is not an essential factor. *Springfield General Osteopathic Hosp.,* 789 S.W.2d at 203.

■ Fraud can scarcely ever be proved by direct evidence, but must generally be proved by circumstantial evidence. *Allison,* 307 S.W.2d at 453. Here, the trial court found several badges of fraud, as noted in the preceding paragraphs. The concurrence of these numerous badges of fraud makes a circumstantial case of fraud and the evidence supports the judgment of the trial court.

The judgment is affirmed.

All concur.

---

2. All of the oral testimony came from the Riccardis and was presented by the plaintiff, Mark Twain. Mark Twain was not bound by the adverse testimony of these witnesses. *Oetting v. Green,* 350 Mo. 457, 166 S.W.2d 548, 551 (1942); *Springfield General Osteopathic Hosp. v. West,*

789 S.W.2d 197, 202 (Mo.App.1990). The trial court could pick and choose among the testimony of these witnesses, accepting that which was adverse to themselves and rejecting that which was self-serving. *See T.B.G. v. C.A.G.,* 772 S.W.2d 653, 654 (Mo. banc 1989).