### In re PANAMA WILLIAMS, INC., Debtor.

### PANAMA WILLIAMS, INC., Plaintiff,

v.

### Ben T. PARR, Defendant.

### Bankruptcy No. 95–46629–H1–11. Adversary No. 96–4349.

United States Bankruptcy Court, S.D. Texas, Houston Division.

May 30, 1997.

---

Patricia Baron Tomasco, Helen Bagot Dreyfus, Sheinfeld Maley & Kay, Houston, TX, for Panama Williams Inc.

William H. Wellborne, Houston, TX, for Ben T. Parr.

## MEMORANDUM OPINION

MANUEL D. LEAL, Bankruptcy Judge.

After careful consideration of the credibility of the witnesses and the evidence presented at the trial of this adversary proceeding conducted on December 16, 1996 and the closing arguments heard on February 11, 1997, this Court rules in favor of defendant and makes the following Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052. To the extent any findings of fact are construed to be conclusions of law, they are adopted as such. To the extent any conclusions of law are construed to be findings of fact, they are adopted as such.

Panama Williams Inc. is a corporation in existence since at least the year 1991 and is in the business of leasing grazing land for cattle and horses. The debtor also owns a ranch as well as a commercial building called the Highway 90A property, which it leases. These 2 pieces of real estate are the debtor's primary assets.

Upon the death of Mrs. LaVerne Shiflett's husband in 1991, a board meeting of Panama Williams Inc. was held, officers were elected and Mrs. Shiflett became the director and president. She served in that capacity until on or about January 11, 1993 when the corporation was essentially sold to Michael J. Douglass for $3,050,000 payable pursuant to a promissory note. The promissory note was to be paid in installments but the vendor did not retain any lien nor security interest in any assets of the corporation or property. However, a $5 million U.S. Treasury Note was pledged by Douglass as collateral to secure payment of the note.

Actually, the shares of Panama Williams Inc., were owned by the LaVerne Shiflett Trust of which Anders Grundfeldt was the trustee who in turn sold the shares to Michael J. Douglass. Mrs. LaVerne Shiflett was one of the beneficiaries of the LaVerne Shiflett Trust. The trustee sold the shares to Douglass free and clear of liens, encumbrances, equities, and claims. The trustee also represented in the sale that no claims existed against any of the corporation's assets, business, or operations.

Michael J. Douglass then took over Panama Williams, Inc. as its president, director and sole shareholder. However, Mrs. Shiflett remained as a director for the duration of the promissory note. Within 16 days of acquiring Panama Williams, Inc., on January 27, 1993, Douglass caused the corporation to borrow $110,000 at 18% interest from the defendant Ben T. Parr. As security for the $110,000 loan the corporation acting through Michael J. Douglass as president, director and sole shareholder granted a lien and deed of trust to the defendant lender Ben T. Parr on the 90A property. The deed of trust was promptly recorded with the County Clerk on January 27, 1993. Mrs. Shiflett was never informed about the loan although she was a director of the corporation.

Afterwards, the corporation acting through Michael J. Douglass borrowed an additional $120,000 from the defendant. The corporation executed a real estate lien note and granted the defendant a deed of trust which was duly recorded on March 2, 1993 and a lien on the respective ranch. Again, Mrs. Shiflett was not told of this loan. The corporation through Michael J. Douglass then took out a third loan on March 26, 1993 from the defendant Ben T. Parr. In return the Corporation executed a $133,000 real estate lien note on March 26, 1993 and granted the defendant a deed of trust and lien on the same ranch. The instruments relating to the third loan were also promptly recorded with the County Clerk on March 30, 1993. Again, this was not disclosed to Mrs. Shiflett. Thus, a total of $363,000 was borrowed by Panama Williams, Inc., through Michael J. Douglass as president, director and sole shareholder all without disclosure to the other director Mrs. Shiflett.

Mr. Douglass produced corporate resolutions reflecting unanimous consent by the sole director to all loans and the granting of liens on the ranch and 90A properties. However, the other director, Mrs. Shiflett, was never informed about any of these. In all of

the corporate resolutions Michael J. Douglass purported to be the sole director although in fact Mrs. Shiflett was also a director.

Out of the $363,000 loan proceeds only $4,600 was used for Panama Williams Inc.'s benefit. The remainder of the loan proceeds went to various individuals for their personal use. Some of the loans were used to pay lending fees charged by some of Ben T. Parr's relatives who brokered the loan. However, most of the proceeds went to Michael J. Douglass and his wife for their personal use and enjoyment.

The 90A property had an appraised value as of February 1996 of $275,000 and the ranch was appraised at $1,400,000 as of February 1996. The 3 liens by Ben T. Parr were the only ones against the properties.

Michael J. Douglass never paid anything and totally defaulted on the promissory note owing to the LaVerne Shiflett Trust. The corporation also defaulted on the 3 promissory notes owed to defendant Ben T. Parr. Unfortunately for the LaVerne Shiflett Trust, the U.S. Treasury Note pledged to them as security by Douglass turned out to be fake. These activities resulted in federal criminal indictments against Michael J. Douglass and a state court judgment vacating the conveyance of the shares of Panama Williams Inc. to Douglass thereby vesting the shares back into the LaVerne Shiflett Trust which then took control of the corporation. The state court actions also resulted in Mrs. Shiflett being elected president of the corporation and placing the ranch and 90A property in her possession. In addition, state law causes of action were filed in state court against Ben T. Parr to remove the liens placed on the ranch and 90A property but the resulting judgments were completely in favor of Ben T. Parr, who was also awarded attorneys fees. Michael J. Douglass was convicted of federal crimes and sentenced to federal prison.

Unable to pay the debt to Ben T. Parr and facing foreclosure of the corresponding liens on the company's ranch and the 90A property, Panama Williams, Inc. filed its bankruptcy petition on September 1, 1995. The LaVerne Shiflett Trust appears on debtor's schedules filed on September 18, 1995 as being owed $400,000 for loans made to the corporation for operating costs. On May 24, 1996, the debtor filed this adversary proceeding seeking to vacate the liens placed by Ben T. Parr pursuant to 11 U.S.C. § 544(b). As of the time of trial, no objection to the LaVerne Shiflett Trust's claim has been filed.

This Court has jurisdiction over this adversary pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H)

■ In a case under Chapter 11 of the United States Bankruptcy Code, the debtor in possession has the same rights as a trustee.[1] As the Plaintiff in this adversary proceeding is also the debtor in possession, it has the same rights as a trustee. Section 544(b) of the United States Bankruptcy Code allows the trustee to avoid certain transfers that a debtor made or obligations incurred.[2] To be afforded the remedy of 11 U.S.C. § 544(b), the trustee must find a real, existing creditor of a particular type—one with an allowable and unsecured claim. The trustee

---

1. 11 U.S.C. § 1107(a). Chapter 11 of the United States Bankruptcy Code provides that:

> Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

*Id.*

2. Section 544(b) provides that:

> The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544(b).

must both identify the actual creditor and the basis on which that creditor could avoid the transfer in question.[3] Thus, the trustee must locate an existing unsecured creditor of the debtor who, on the date of bankruptcy, is able to avoid a transfer of property.[4] If the trustee can find such an unsecured creditor, the trustee takes over those rights.

■ The rights assumed by the trustee under section 544(b) are those given under applicable law to particular specified unsecured creditors. Thus, section 544(b) gives the trustee access to state reach-back statutes that allow unsecured creditors to avoid transfers. State fraudulent conveyance law is the most common use of section 544(b) for it is usually more generous than the fraudulent conveyance law provided for in the U.S. Bankruptcy Code.[5] The applicable law relied on by plaintiff in this adversary is Texas Business and Commerce Code section 24.005.

■ Pursuant to section 24.005:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whether the creditor's claim arose before or within a reasonable amount time after the transfer was made or the obligation was incurred, if the debtor made the transfer or the obligation:

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(A) was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) intended to incur, or believed or reasonably should have believed that the

debtor would incur, debts beyond the debtor's ability to pay as they become due.[6]

To be permitted to avoid these liens under 11 U.S.C. § 544(b), it is clear to this Court that an unsecured creditor of Panama Williams, Inc. must have existed on the three transfer dates. The Plaintiff failed to prove by a preponderance of the evidence that any unsecured creditors held an unsecured claim against this debtor on January 27, 1993, March 1, 1993, or March 26, 1993 the dates on which the transfers occurred. While the Plaintiff did introduce Schedule F of the debtor's bankruptcy petition indicating that as of September 18, 1995, the LaVerne Shiflett Trust did hold various claims against the debtor, the Plaintiff failed to show when these claims arose and accordingly this Court is not able to permit recovery under 11 U.S.C. § 544(b).

Assuming arguendo that the LaVerne Shiflett Trust did hold an unsecured claim against the debtor on January 27, 1993, March 1, 1993, and March 26, 1993, such that it could avoid those liens under 11 U.S.C. § 544(b), it is still clear to this Court that the Plaintiff can not recover in this adversary proceeding. The Plaintiff failed to prove that either the debtor Panama Williams, Inc., actually intended to hinder, delay, or defraud any of its creditors or that the debtor did not receive reasonably equivalent value for the transfer.

■ First, there has been no evidence presented to this Court that under the applicable Texas statute the debtor Panama Williams, Inc. intended to defraud any creditor.[7] While it is clear, that Michael Douglass intentionally defrauded the debtor, there has been insufficient credible evidence produced

3. THOMAS H. JACKSON, THE LOGIC AND LIMITS OF BANKRUPTCY LAW 79 (1986).

4. Sommers v. Sorce (In re Major Funding Corp.), 126 B.R. 504, 507 (Bankr.S.D.Tex.1990).

5. 11 U.S.C. § 548.

6. TEX. BUS. & COM. CODE ANN. § 24.005(a) (West 1995).

7. Section 24.005 provides that:

In determining actual intent under Subsection (a)(1) of this section, consideration may be given, among other factors, to whether:
(1) the transfer or obligation was to an insider;
(2) the debtor retained possession or control of the property transferred after the transfer;
(3) the transfer or obligation was concealed;

indicating that the debtor Panama Williams, Inc. actually intended to defraud any creditor. Mr. Douglass was the one who pledged a fake U.S. Treasury Note. Mr. Douglass was the one who obtained false corporate resolutions indicating unanimous consent by the sole director to all loans and the granting of the liens on the ranch and the 90A properties. Mr. Douglass was the one who took the loan proceeds and used it for his personal benefit. This is where the fraud lies in this case in that it was perpetrated on the debtor and not on creditors. Applying the Texas statute it is clear that the debtor, Panama Williams, Inc. did not satisfy the requirements establishing the intent to defraud anyone. While the Court recognizes that debtor is a corporation and can only act through its officers, directors, employees and agents here the facts are that the corporation did not validly act through its directors. One director did not even know about the transactions that the other director fraudulently perpetrated on the corporation. The corporation's president Michael J. Douglass fabricated false corporate documents to obtain the loans and grant security interests to corporate assets. It cannot be shown that the corporation had the intention to hinder, delay or defraud creditors. There has been no showing that Panama Williams Inc. acted with actual intent to defraud with respect to this transfer. Not one of the factors evidencing actual intent to defraud listed in the relevant state statute has been demonstrated in this case.[8] Panama Williams granted valid security interests in its property and in return received equivalent value loan proceeds. Notwithstanding the fact that Mr. Douglass intended to defraud the debtor by these transfers, there have not been any facts indicating that the debtor itself intended to defraud its creditors. Accordingly, the Court cannot conclude that the debtor Panama Williams Inc. intended to defraud any of its creditors by these transfers.

■ Second, it is clear to this Court that the debtor did get reasonably equivalent value for the transfers. The key fact in respect to all these transfers is that the debtor transferred a security interest in the property and not the property itself and that the security interest was exchanged for a monetary amount equal to the value of the security interest.

On January 27, 1993, the debtor transferred a security interest in the 90A property worth $110,000 and received $110,000 in the form of a loan minus some closing costs. On March 1, 1993, the debtor transferred a security interest in the ranch worth $120,000 and in turn received $120,000. On March 26, 1993, the debtor transferred a security interest in that same ranch worth $133,000 and received $133,000. It is apparent to this Court that the debtor received reasonably equivalent value if not equal value for its transfers. It is important to note that all the transferee Ben T. Parr received was a security interest in the property equal to the value of the loan. The transferee was not conveyed the property for these amounts, it merely obtained an interest in these properties equivalent to the amount of money it had loaned the corporation. The debtor received capital equal to the amount of the security interest given to the transferee. Accordingly, this Court concludes that the debtor received reasonably equivalent value for the transfers.

(4) before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all of the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred;

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

TEX. BUS. & COM. CODE ANN. § 24.005(b) (West 1995).

8. *See id.*

With respect to whether the remaining asset of the debtor were unreasonably small in relation to the business it is clear that the debtor had substantial equity in both the ranch and highway 90A property even after the transfers. The evidence established that the ranch was worth approximately $1.4 million and the 90A property was valued at $275,000. After the $363,000 lien transfers occurred there was excess of over $1 million of unencumbered fair market value left with the debtor. There was some evidence that debtor did not have sufficient cash to pay its bills and this is a recognized symptom of insolvency. But the Court nevertheless must cope with the fact that the value of debtor's assets greatly exceeded its liabilities which is a requirement of the Texas statute.

Judgment is rendered for the Defendant, Ben Parr. Plaintiff takes nothing on its complaint.