**In re Don Allen KOPP, Jr., Debtor.**

**Christopher J. Redmond, Chapter 7 Trustee, Plaintiff,**

**v.**

**Don Allen Kopp, Jr., et al., Defendants.**

**Bankruptcy No. 04–23171.**
**Adversary No. 06–6139.**

United States Bankruptcy Court, D. Kansas.

Feb. 28, 2008.

---

41. Case No. 07 CV 3948, District Court, Sedg-wick County, Kansas.

Christopher J. Redmond, One Hallbrook Place, Leawood, KS, pro se.

Scottie S. Kleypas, Husch & Eppenberger, LLC, Kansas City, MO, for Plaintiff.

Todd A. Luckman, Stumbo Hanson, LLP, Topeka, KS, for Defendants.

## MEMORANDUM AND ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF

ROBERT D. BERGER, Bankruptcy Judge.

The parties have filed cross-motions for

summary judgment.[1] The Trustee sued defendants Don Kopp ("Debtor"), Connie Dille, and the Connie J. Dille Trust to avoid fraudulent transfers and to recover real property or its value for the benefit of the Estate under 11 U.S.C. §§ 542, 543, 544, and 550. This matter constitutes a core proceeding over which this Court has jurisdiction.[2] There being no genuine issue of material fact, the Court grants the Trustee's motion and denies the Defendants' motion.

## Findings of Fact

On December 30, 1998, Debtor plead guilty to physically attacking his ex-wife, Dana Dollins, and was sentenced to prison. On December 29, 1998, the day before he entered his guilty plea, Debtor transferred his Shawnee residence, a Lenexa commercial property, and a Gardner commercial property to his mother, Connie Dille, for three dollars. The Lenexa and Gardner properties were business locations for Don Kopp Interiors, Inc., which was owned and operated by Debtor. Debtor also gave all his stock in Don Kopp Interiors to his mother for no consideration. In a June 16, 2000, deposition, Debtor testified he gave his mother his business and property because he was going to prison; he might die in prison; he could not pay his mortgage while he was in prison; and "because [his house] belonged to [Dille] anyway."[3] Debtor testified he thought the properties belonged to his mother because he thought Dille's name may have been on the deeds with his.

In an October 15, 2003, deposition, Dille testified about the 1998 transfers. Dille testified Debtor owned the real properties, but her name may have been on the deeds. However, it was Dille's understanding that prior to 1998 she would only own the properties in the event something happened to her son.[4] After repeatedly failing to recall why her son gave her all his property in 1998, Dille finally testified Debtor told her he might die in prison; he wanted the Shawnee property to be his daughter's home; he wanted the Gardner property to pay for her education; and he told his mother to sell the Lenexa property "or do what you can with it."[5] Debtor himself never testified he made the transfers as a legacy for his daughter. Debtor never documented any intent to leave the properties to his daughter. Rather, Debtor outright gave substantially all his assets to his mother on the eve of learning his sentence for attacking Dollins. Debtor went to prison from February, 1999, to approximately September, 2001.

In June, 1999, Dollins filed suit against Debtor in federal court for damages she sustained during the attack. This suit was dismissed, and although the dismissal was eventually overturned on appeal, Dollins filed a state court suit on July 3, 2001. Meanwhile, in 2000, while Dollins' first suit was pending, Dille transferred the three real properties to the Dille Trust. At first, Dille could not recall why she transferred

---

1. Defendants' Motion for Summary Judgment, Doc. No. 61, and Trustee's Motion for Summary Judgment, Doc. No. 75.

2. 28 U.S.C. § 157(b)(2)(H); 28 U.S.C. § 1334.

3. Trustee's Surreply to Defendant's Reply to Trustee's Memorandum in Opposition of Motion for Summary Judgment, Doc. No. 74, Exhibit 2 at 90:14 to 92:18.

4. Trustee's Surreply to Defendant's Reply to Trustee's Memorandum in Opposition of Motion for Summary Judgment, Doc. No. 74, Exhibit 1 at 16:4 to 16:8.

5. Trustee's Surreply to Defendant's Reply to Trustee's Memorandum in Opposition of Motion for Summary Judgment, Doc. No. 74, Exhibit 1 at 32:14 to 33:11; 41:13 to 41:21; 59:8 to 59:25.

the properties to her trust.[6] Dille eventually testified she created the Dille Trust and transferred the real properties to the Dille Trust because she was trying to manage her affairs the way her husband had when he was alive.[7] Dille did not mention her granddaughter as a reason for the Dille Trust.

In 2003, Dollins amended her state court petition for damages against Debtor to include a count against Dille, the Dille Trust, Don Kopp Interiors, and Dille Properties, Inc. In addition to counts for assault, battery, false imprisonment, and intentional infliction of emotional distress, the amended petition included a count to avoid the allegedly fraudulent property transfers against Dille and the other defendants. The lawsuit was pending when Debtor filed for bankruptcy relief.

After his release from prison, Debtor regained ownership of Don Kopp Interiors from his mother, but the real properties have remained in his mother's trust. In addition to reclaiming his business, Debtor manages Dille Properties. Dille Properties manages the real properties held by the Dille Trust comprised of the Shawnee residence, the Lenexa property, the Gardner property, and Dille's residence. Debtor handles Dille Properties' bank accounts and pays the bills for the Dille Trust properties. Debtor maintains no separate personal bank account. The only bank accounts listed by the Debtor are business accounts for Dille Properties and Don Kopp Inc. Don Kopp Inc. was formed in December, 2003. It operates out of the Lenexa property. Don Kopp Interiors is no longer conducting business, but when it did, it operated out of the Lenexa and Gardner properties. Debtor once again

resides in the Shawnee property he owned prior to his incarceration. Debtor does not pay rent to stay in his Shawnee home; rather, he collects business rent from his own company at the Lenexa property and pays the mortgage on the Shawnee home with the collected rent proceeds. All the money passes through Dille Properties' bank accounts. Either Debtor, Dille, or both Debtor and Dille are the only individuals with interest in or control over Don Kopp Interiors, Don Kopp Inc., the Dille Trust, and Dille Properties. In February, 2007, while this litigation was pending, the Gardner property was encumbered with a second mortgage in the amount of $18,102.80. The parties do not explain who encumbered the property or for what purpose $18,102.80 was loaned against real property subject to a pending lawsuit.

Debtor filed his Chapter 7 petition on July 28, 2004. Christopher J. Redmond is the duly appointed Trustee. Debtor did not list Dollins' state court petition to avoid fraudulent transfers as an Estate asset. Instead, Debtor listed the state court action as simply a "Petition for Damages" in response to the Statement of Financial Affairs question about lawsuits to which the debtor was a party within one year prior to the bankruptcy filing. Debtor scheduled Dollins as an unsecured creditor with an unknown claim amount on his Schedule F. The claim was not listed as contingent, unliquidated, or disputed. Dollins did not file a complaint to determine the dischargeability of her claim.

On November 23, 2004, the Trustee filed a Report of No Distribution and Intended Abandonment. Debtor received his discharge on December 15, 2004, and the case

---

**6.** Trustee's Surreply to Defendant's Reply to Trustee's Memorandum in Opposition of Motion for Summary Judgment, Doc. No. 74, Exhibit 1 at 46:10 to 46:22; 47:16 to 47:18.

**7.** Trustee's Surreply to Defendant's Reply to Trustee's Memorandum in Opposition of Motion for Summary Judgment, Doc. No. 74, Exhibit 1 at 57:21 to 58:5.

was closed. After an exchange of correspondence between Debtor's counsel and Dollins' counsel, Dollins voluntarily dismissed the state court action without prejudice in September, 2005. The Trustee was not included in the correspondence leading to dismissal of the state court action.

On November 29, 2005, the Trustee moved to reopen the case, having discovered Dollins' claim to avoid fraudulent transfers. The Court granted the Trustee's motion on February 24, 2006, over the Debtor's objections. The Court set June 12, 2006, as the proof of claim bar date. Dollins timely filed a proof of claim. Debtor objected to Dollins' claim, alleging the Trustee abandoned the § 544(b) cause of action when the case closed, which returned the cause of action to avoid transfers back to Dollins. Debtor alleged that because Dollins then dismissed the state court action, and because the statute of limitations for avoiding fraudulent transfers had since expired, she retroactively lost her claim as of the petition date under 11 U.S.C. § 502(b)(1). Debtor argued the claim was no longer allowable because it was no longer enforceable as being time-barred.

On August 31, 2007, the Court denied Debtor's objection and allowed Dollins' claim as an unsecured claim as of the petition date in an unliquidated amount.[8] The Court found neither the Trustee's right to pursue the § 544(b) fraudulent conveyance claim nor the property itself, if recovered, had been abandoned upon closing the case because the Trustee did not know the claim or property existed. The Court rejected Debtor's argument he had adequately disclosed the true nature of the lawsuit. The Court found Debtor obscure-

ly described Dollins' suit to avoid fraudulent transfers as merely a petition for damages in his Statement of Financial Affairs, and the barest reference to a damages lawsuit in the Statement of Financial Affairs was insufficient for the technical abandonment of the fraudulent transfer claim under 11 U.S.C. § 554(c). Accordingly, the Court held Dollins' subsequent dismissal of the state court action was void *ab initio* because the Trustee's § 544 cause of action remained protected by the automatic stay even after the case closed.

In these summary judgment pleadings, Debtor now argues he had no duty to disclose a § 544(b) claim because some courts have held such claims are not estate assets. Debtor contends § 546(a)(2) barred the Trustee's claim when the main case closed in December, 2004. The Trustee counters with his own summary judgment motion, arguing his suit is timely and is proven on the facts presented. The Trustee filed the instant suit on July 25, 2006, within § 546(a)(1)'s two-year limitation period.

The first issue is whether closing a case under the mistaken belief the estate has been fully administered forever bars a subsequent avoidance action upon its later discovery. The second issue is whether the Trustee has satisfied his burden of proof regarding the fraudulent nature of the transfers.

## Conclusions of Law

### A. Summary Judgment Standard.

Summary judgment is appropriate if the moving party demonstrates there is no genuine issue as to any material fact, and he is entitled to judgment as a matter of law.[9] A movant who does not bear the ultimate burden of persuasion at trial must demonstrate to the court a lack of evidence

---

8. *In re Kopp,* 374 B.R. 842 (Bankr.D.Kan. 2007).

9. FED. R. BANKR.P. 7056.

from the other party on an essential element of that party's claim.[10] If the movant meets this burden, the nonmovant who would bear the burden of persuasion at trial must go beyond the pleadings and set forth specific facts which would allow the court to find for the nonmovant.[11]

Cross-motions for summary judgment allow the court to assume the only evidence to be considered has been submitted with the pleadings. However, cross-motions are to be considered independently, and summary judgment is not appropriate if disputes remain as to any material fact.[12] When the matter would be tried before the court as opposed to a jury, the court resolves any conflicting inferences drawn from undisputed evidentiary facts. All inferences are to be construed in favor of the non-moving party.[13] Only when reasonable minds could not differ as to the import of the proffered evidence is summary judgment proper.[14]

Summary judgment generally is not favored when an element of the case is the defendant's alleged fraudulent intent.[15] However, actual intent may be proven by circumstantial evidence or on inferences drawn from a course of conduct because a defendant is unlikely to testify that his or her intent was fraudulent. Thus, a court may look to all the surrounding facts and circumstances and grant summary judgment if appropriate.[16]

## B. The Trustee's Claims Are Not Barred by the Statute of Limitations.

During the bankruptcy case, the trustee is vested with the right to pursue and recover fraudulently conveyed assets to the exclusion of all other creditors.[17] Particular to this case, § 544(b) allows the Trustee to step into the position of an unsecured creditor as of the petition date and pursue that creditor's state law avoidance action to recover property fraudulently conveyed pre-petition. However, the Trustee's powers are limited by § 546(a) which requires the Trustee to bring a § 544 cause of action (as applicable to this case) within the earlier of two years after the entry of the order for relief or by the time the case is closed. Thus, if the case closes before two years after the order for relief, the Trustee's avoidance powers terminate with the closing of the case.[18] Section 546(a)(2) does not reference or consider the possibility a closed case can be reopened pursuant to § 350(b).[19]

Section 350(b) allows a case to be reopened to administer assets or for other cause. The bankruptcy court is obliged to reopen a case when a *prima facie* case is made that an estate has not been fully

**10.** *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**11.** *Id., citing* FED.R.CIV.P. 56(e).

**12.** *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

**13.** *Id.*

**14.** *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**15.** *In re Davison*, 296 B.R. 841, 847 (Bankr. D.Kan.2003).

**16.** *Id.*

**17.** *In re Integrated Agri, Inc.*, 313 B.R. 419, 427 (Bankr.C.D.Ill.2004); *In re Tessmer*, 329 B.R. 776, 779 (Bankr.M.D.Ga.2005).

**18.** 11 U.S.C. § 546(a)(2).

**19.** *In re White*, 104 B.R. 951, 955 (S.D.Ind. 1989), *citing In re Stanke*, 41 B.R. 379, 381 (Bankr.W.D.Mo.1984), and 4 COLLIER ON BANKRUPTCY § 546.02[2] (15th ed.).

administered and has previously unknown assets.[20] Since any property recovered by an avoidance action becomes estate property to be administered, the trustee's avoidance powers must be reinstated as part of the continuing administration of the case's assets. The legislative history to § 350 provides, "the court may permit reopening of a case so that the trustee may exercise an avoiding power." [21] If the basis for reopening the case is to pursue fraudulently transferred assets, then the bankruptcy court's duty is not only to reopen the case, but also to empower the trustee to act. Cause exists to reopen a case, reappoint the trustee, and restore the trustee's avoidance powers when the debtor is shown to have failed to adequately disclose a material fact to the trustee.[22]

Some courts have struggled with reconciling § 350(b) which allows a case to be reopened with § 546(a)(2)'s bar to avoidance actions after the case is closed. For example, *Petty*, *White*, *Serrato*, and *Stanke* contained facts where the debtor was not entirely forthcoming in the information provided to the trustee. These courts held a case is not closed for purposes of § 546(a)(2) until the case has been "fully administered" under § 350. These courts refused to read § 350 and § 546(a)(2) in such a way as to permit reopening to administer assets, but to deny recovery of those assets by a narrow reading of

§ 546(a). Therefore, the trustees in these cases were allowed to proceed with avoidance actions even when the actions were not commenced until after the cases had been closed and then reopened. As *White* stated, "[t]o permit an erroneous closing to bar reopening would allow the debtors to profit from their own misconduct." [23] Accordingly, these courts afforded the misinformed trustees relief from § 546(a)(2) by reopening the case for cause.

■ In another case, the court afforded the trustee relief from § 546(a)(2) by setting aside the closure order under Fed. R. Bankr.P. 9024 and reinstating the trustee's avoidance powers.[24] *Feringa* is similar to the Tenth Circuit's *Woods* case in which the court granted relief from an order closing the case and revoked the technical abandonment of the remaining assets.[25] In both cases, the trustee precipitated the case closing by mistake, which is an acceptable reason to grant a party relief from an order under Fed. R. Bank. P. 9024. Relief is also available for excusable neglect, discovery of evidence which by due diligence could not have been discovered earlier, the debtor's misconduct, and any other reason justifying relief from operation of the judgment or order.[26] The reasons for vacating a closure order, specifically the debtor's misconduct, are similar to the reasons for reopening a case for

**20.** *In re Riazuddin,* 363 B.R. 177, 183–84 (10th Cir. BAP 2007).

**21.** H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 338 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 49 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6294–95, 5787, 5835.

**22.** *See, e.g., Gross v. Petty (In re Petty),* 93 B.R. 208 (9th Cir. BAP 1988); *In re White,* 104 B.R. 951 (S.D.Ind.1989); *Decker v. Voisenat (In re Serrato),* 214 B.R. 219 (Bankr.N.D.Cal. 1997); *In re Stanke,* 41 B.R. 379 (Bankr. W.D.Mo.1984).

**23.** *In re White,* 104 B.R. at 955, *citing In re Stanke,* 41 B.R. at 381, and 4 COLLIER ON BANKRUPTCY § 546.02[2] (15th ed.).

**24.** *In re Feringa,* 376 B.R. 614 (Bankr. W.D.Mich.2007).

**25.** *In re Woods,* 173 F.3d 770, 778 (10th Cir. 1999).

**26.** FED.R.CIV.P. 60(b) as incorporated by FED. R. BANKR.P. 9024.

cause. Further, the court can provide relief from an order closing the case if the order will result in injustice.

The cases relied on by Debtor are distinguishable. Debtor's cases contain facts wherein the trustee had sufficient knowledge to pursue an avoidance action but unreasonably delayed in doing so and allowed the case to close without taking action. In *Cortez*, the trustee purposely filed a no asset report, even though he was still investigating a possible lien avoidance. He intended to let the case close if he discovered the secured creditor had perfected its lien in time. The trustee assumed he had 60 days from the date he filed the no asset report before the case would close. He intended to complete his investigation in that time and withdraw the report if necessary. When the trustee was caught surprised by the case closing only 13 days after he filed the no asset report, he asked the court to reopen. The court declined, finding fault with the trustee's habit of prematurely filing no assets reports. The debtors clearly disclosed the potential for the lien to be avoided; thus, the court found no cause to relieve the trustee from his choice to file a no asset report before concluding his investigation.[27] Likewise, in *Lyons*, the evidence showed a successor trustee knew about an avoidance action a full year before the statute of limitations expired, and yet, she failed to file in time. The court refused to give her any more time than the year she had already squandered.[28]

The rule is when an asset has been disclosed or the trustee is aware of the asset and has had an opportunity to pursue an avoidance action but fails to do so in the time provided, the limitations statute bars resurrecting the avoidance claim when the case is reopened.[29] On the other hand, when an asset remains undisclosed and unknown to the trustee, actions or proceedings otherwise barred by § 546(a)(2) may be pursued after the case is reopened for that cause. The certainty afforded a debtor and his family by strict rules must be balanced with the benefits of encouraging full disclosure by debtors, the rights of creditors whose claims will be discharged, and the full and proper administration of the estate.

The same rationale supports reinstating the trustee's powers to recover the property or its value under § 550. If the debtor omitted material information from his schedules and statement of financial affairs, the case may be reopened, and the trustee is empowered not only to avoid transfers, but also to recover their value.

## C. The Debtor's Disclosure Was Insufficient as a Matter of Law.

Dollins' avoidance claim, if known, would have provided the Trustee with a § 544(b) cause of action as of the petition date because Dollins was an existing unsecured creditor in a position to avoid a transfer of Debtor's property under state law.[30] Without knowledge of Dollins' pending avoidance action, the Trustee filed a Report of No Distribution and Intended

**27.** *In re Cortez*, 255 B.R. 324, 328 (Bankr. D.Or.2000).

**28.** *In re Lyons*, 130 B.R. 272, 280 (Bankr. N.D.Ill.1991); *see also Helms v. Arboleda (In re Arboleda)*, 224 B.R. 640 (Bankr.N.D.Ill. 1998) (transfers disclosed; trustee did not timely investigate).

**29.** *In re Mullen*, 337 B.R. 744, 749 (Bankr. D.N.H.2006).

**30.** *In re Kopp*, 374 B.R. at 846 n. 10, *citing Panama Williams, Inc. v. Parr (In re Panama Williams, Inc.)*, 211 B.R. 868, 871–72 (Bankr. S.D.Tex.1997); *In re Sheffield Steel Corp.*, 320 B.R. 423, 446 (Bankr.N.D.Okla.2004).

Abandonment, which led to the case being erroneously closed. Debtor, having failed with his claim objection that the Trustee technically abandoned the § 544(b) claim back to Dollins' upon closing of the case, now argues § 544(b) causes of action are not estate property to be listed on a debtor's schedules. Debtor argues § 546(a)(2) should bar all actions, regardless the facts.

The Court need not address whether § 544(b) actions are estate property to be listed as an asset because Debtor concedes there was a place on the Statement of Financial Affairs to disclose the petition to avoid fraudulent transfers, *i.e.*, in response to the question about lawsuits to which the debtor was a party within one year prior to the bankruptcy filing. Debtor argues "Petition for Damages" was the title of the lawsuit; thus, this was all he had to disclose. He continues with his insistence that there is nothing requiring a debtor to provide a count-by-count description of his lawsuits. Debtor goes so far as to argue if the Trustee were interested in the lawsuit, he could have obtained a copy from the public record. The Court will not condone and thereby encourage such cagey disclosure. The Court finds Debtor should have substantively disclosed the lawsuit (in the fewest words possible) as: "Petition for Damages *and to avoid transfers.*" The Debtor did not.

Debtor argues this case is about the Trustee's lack of diligence rather than his own lack of candor. Debtor maintains that because he identified a "Petition for Damages" in his pleadings, he fulfilled his duty

to disclose, and the burden to investigate the complete nature of the lawsuit fell on the Trustee. He criticizes the Trustee for not requesting a copy of the lawsuit and for not attending the § 341 hearing in person. In balancing the parties' duties, the Court finds Debtor's duty to include four words to accurately describe the lawsuit trumps any duty the Trustee may have had to visit the state courthouse and read the petition himself. While it is only a possibility the Trustee may have asked the right questions at the § 341 meeting and discovered the count to avoid fraudulent transfers, it is a certainty the Trustee would have been on notice to investigate the lawsuit had Debtor identified it as a "Petition for Damages *and to avoid transfers.*" The Debtor wants the same treatment he would have enjoyed had he fully disclosed, but he did not fully disclose. Debtor's failure puts his case in line with cases involving a material omission by the debtor and not with those cases involving a less than diligent trustee. Debtor decided to list the petition by its title, not by its substance. This catch-me-if-you-can disclosure is inadequate. Because the Trustee did not know about the § 544(b) claim due to Debtor's material omission, the Trustee did not abandon or otherwise relinquish the claim back to Dollins.[31] For the same reasons the Trustee could not abandon an undisclosed § 544(b) claim, the Trustee may not be barred by § 546(a)(2) from pursuing the § 544 claim once it is discovered. This case is not closed. The Trustee's avoidance action is not barred by § 546(a)(2). The Trustee filed the action

---

**31.** *Kopp,* 374 B.R. at 847–48 (unknown § 544(b) claim remained protected by the automatic stay even after the case closed; the cause of action did not return to the creditor; *see also In re Berg,* 376 B.R. 303, 312 (Bankr. D.Kan.2007) (section 544(b) claim remains with trustee until either abandonment, a determination the trustee does not have a viable claim, or a court order grants a creditor permission to pursue the claim); *In re MortgageAmerica Corp.,* 714 F.2d 1266, 1275 (5th Cir.1983) (any effort under § 544 to recover property is essentially an action to recover property belonging to the debtor and such actions are protected by the automatic stay); *N.L.R.B. v. Martin Arsham Sewing Co.,* 873 F.2d 884, 887 (6th Cir.1989) (section 544 actions are protected by the automatic stay).

within two years after the entry of the order of relief and is within the § 546(a)(1) limitation. Defendant's motion for summary judgment based on the statute of limitations is denied.

### D. Debtor Transferred his Real Properties with Actual Intent to Defraud his Creditors.

 Federal law provides the trustee with rights of an actual unsecured creditor under § 544(b); however, the extent of those rights is determined by applicable state law.[32] In this case, the Court has already determined Dollins held a viable claim under Missouri law protected by the automatic stay; thus, Missouri law is the applicable law for determining the Trustee's rights under § 544(b) in this case. If the Court finds the transfers fraudulent under Missouri law, then the Trustee may avoid the transfers under § 544(b).

 Missouri law requires the Trustee to prove by clear and convincing evidence (1) the Debtor transferred property with actual intent to hinder, delay, or defraud any creditor; or (2) Debtor transferred property without receiving a reasonably equivalent value in exchange for the transfer, and the Debtor reasonably should have believed he would incur debts beyond his ability to pay as they became due.[33] Direct evidence of fraud is rarely available. Most debtors do not admit to transferring property with an actual intent to defraud creditors. In most cases, the evidence consists of inferences drawn from the circumstances surrounding the trans-

action and relationship and interests of the parties. The Missouri Uniform Fraudulent Transfer Act provides actual intent may be determined by considering, among other factors, whether (1) the transfer was to an insider; (2) the debtor retained possession or control; (3) the transfer was concealed; (4) the debtor anticipated litigation; (5) the transfer was of substantially all the debtor's assets; (6) the debtor fled; (7) the debtor concealed assets; (8) the debtor did not receive equivalent value; (9) the debtor became insolvent after the transfer; (10) the transfer occurred close in time to a substantial debt being incurred; and (11) the debtor transferred essential business assets to a lienor who transferred them to an insider of the debtor.[34] Courts recognize other circumstances as badges of fraud including: (1) a conveyance to a relative; (2) transactions different from the usual method of transacting business; (3) transfers in anticipation of a lawsuit or execution; (4) the transfer of all or nearly all debtor's property; and (5) failure to produce rebutting evidence when circumstances surrounding the transfer are suspicious.[35] The more badges of fraud associated with a transfer, the stronger the inference of fraud which requires an explanation from the debtor. In assessing a transfer's propriety, giving and receiving sufficient consideration is key.[36] Sufficient consideration for a conveyance usually defeats an avoidance action. However, when a debtor gives away his property in close proximity to an adverse financial event, other circumstantial evidence bolsters the indication of fraudu-

---

**32.** *Gaddis v. Allison,* 234 B.R. 805, 811 (D.Kan.1999).

**33.** Mo.Rev.Stat. § 428.024 (1992); *Mark Twain Kansas City Bank v. Riccardi,* 865 S.W.2d 425, 427 (Mo.Ct.App.1993); *Bueneman v. Zykan,* 52 S.W.3d 49, 54 (Mo.Ct.App. 2001).

**34.** Mo.Rev.Stat. § 428.024.2 (1992).

**35.** *Mark Twain Kansas City Bank,* 865 S.W.2d at 427; *Fischer v. Brancato,* 147 S.W.3d 794, 799 (Mo.Ct.App.2004).

**36.** *Mark Twain Kansas City Bank,* 865 S.W.2d at 427.

lent intent. Under Missouri law, the grantor's intent is the focus. The grantee's knowledge might be relevant to the issue of the grantor's intent, but grantee's knowledge or notice is not an essential factor.[37]

▮▮▮ Debtor and his mother admit numerous facts constituting badges of fraud. Debtor gave his mother substantially all his property the day before he plead guilty to intentionally injuring his ex-wife. Debtor transferred his property for no consideration. Dille then created the Dille Trust and transferred the real properties to the Trust while Dollins sued Debtor for the attack. After prison, Debtor returned to his former Shawnee home and began managing Dille Properties, meaning he handled the bank accounts and paid the bills for all his former properties now held in the Dille Trust. Debtor resumed paying the Shawnee mortgage through his family's corporate bank accounts with rent proceeds from his corporation's use of his former Lenexa property. Dille concedes Debtor now handles all the details indicative of ownership for the same properties he owned shortly before being incarcerated.

The undisputed evidence does not collaborate an honest reason for the transfers. Going to prison is not a legitimate reason to transfer property.[38] Before the transfers and before entering his plea, Debtor had met with a pre-sentencing officer and was made aware of the possible consequences.[39] The pending prison sentence supports the notion the transfers were made shortly before Debtor knew he would be unable to pay his bills. Debtor admitted as much regarding his mortgage. Further, Debtor knew he was about to plead guilty to an intentional attack on his ex-wife. His liability was about to be admitted in open court. Restitution, either criminal or civil, hung over Debtor like Damocles' sword.

The only evidence of estate planning is Dille's 2003 deposition; however, objective evidence pre-dating her testimony makes no reference to Debtor's daughter. Debtor transferred the properties to Dille outright with no paperwork or other collaborating evidence showing any intent to leave the properties to his daughter. Debtor himself never testified he meant to leave his property to his daughter. Furthermore, both Debtor and Dille thought Dille's name was already on the deeds; thus, the net effect of the transfer was simply to remove Debtor's name from the titles and thereby remove the properties from the reach of his creditors-in particular, his ex-wife. Thereafter, Dille transferred Debtor's property into a trust while Debtor weathered the civil suit brought by his former wife. After prison, Debtor resumed his business, but he did not open any bank accounts; he did not own any real property; and he did not own any assets subject to execution. Debtor and Dille have titled the property so Debtor can continue to enjoy all the attributes of ownership while remaining judgment-proof against creditors.[40] The numerous indicia of fraud and the lack of any factual dis-

---

37. *Id.* at 428.

38. *Kirkwood v. Glass (In re Phillips and Hornsby Litigation)*, 204 Fed.Appx. 398 (5th Cir.2006) (not selected for publication in the Federal Reporter).

39. Trustee's Surreply to Defendant's Reply to Trustee's Memorandum in Opposition of Mo-

tion for Summary Judgment, Doc. No. 74, Exhibit 1 at 59:12 to 59:19.

40. *See, e.g., Fischer v. Brancato*, 147 S.W.3d at 794 (defendants went to great lengths to divert debtor's assets through his family corporation and ultimately to his wife in effort to avoid creditors).

putes make summary judgment appropriate.

### E. The Trustee Has Proven the Transfers Were Constructively Fraudulent.

▌ The Trustee is also entitled to prevail without showing actual fraudulent intent if he proves the Debtor transferred property for less than adequate value, thereby making himself unable to meet his obligations.[41] Voluntarily transferring so much of the debtor's property as to leave him unable to pay his debts is constructively fraudulent and void against existing creditors, regardless of actual intent.[42] A transfer is constructively fraudulent if the debtor received inadequate consideration and "reasonably should have believed that he would incur debts beyond his ability to pay as they became due."[43] The trustee must show the debtor knew of a liability or reasonably should have believed he would incur a liability he would be unable to pay.[44] For example, in *Van Vleck*, the trustee failed to meet this burden when he could not prove the debtor knew about a business debt against a partnership in which the debtor held a 20 percent interest. Likewise, the trustee failed to prove a $14,000 judgment debt entered against the debtor could not be satisfied given the debtor made a $100,000 annual salary, and the transfer, by comparison, was quite small.

The facts in this case show Debtor received no consideration for transferring substantially all his property on the eve of pleading guilty to a violent crime. The difference between the business debts in *Van Vleck* and Dollins' claim is Debtor knew he injured his ex-wife, and he knew he would soon have no income from which to compensate her for her injuries. By pleading guilty, Debtor's liability would be admitted. Debtor was going to prison. His real properties would be the only assets vulnerable to forfeiture to compensate his ex-wife. Debtor testified as follows about his knowledge of Dollins' claim:

> The Defendant had no knowledge of a potential lawsuit by Dana Dollins in December of 1998. Neither he, nor any representative or attorney employed by him, to his knowledge, were given a written demand for payment of any claim, nor issued notice or summons regarding a suit by Ms. Dollins. The first indication he received that a lawsuit was contemplated was in communications with his attorney at some point in June of 1999, while he was incarcerated.[45]

This carefully worded affidavit does not say Debtor had no reason to believe he owed Dollins anything for her injuries. The Trustee does not have to show Debtor received a written demand or was aware of a lawsuit. The Trustee must show, and has shown, Debtor had reason to know he was liable for Dollins' claim, and he would be unable to pay. The effect of his transfers the night before pleading guilty removed all his property from the possibility of execution. The evidence establishes by clear and convincing evidence a constructive intent to defraud creditors as a matter of law.

### F. Conclusion

For the foregoing reasons, Debtor's Motion for Summary Judgment is DENIED.

---

**41.** Mo.Rev.Stat. § 428.024.1(2) (1992); *Sosne v. Van Vleck (In re Van Vleck)*, 211 B.R. 689 (Bankr.E.D.Mo.1997).

**42.** *Citizens Nat'l Bank of Maryville v. Cook*, 857 S.W.2d 502, 505 (Mo.Ct.App.1993).

**43.** Mo.Rev.Stat. § 428.024.1(2)(b) (1992).

**44.** *In re Van Vleck*, 211 B.R. at 693.

**45.** Response to Plaintiff's Motion for Summary Judgment, Doc. No. 79, Exhibit A, ¶ 4.

The Trustee's Motion for Summary Judgment is GRANTED. The transfers of the Shawnee, Lenexa, and Gardner properties are void and avoided under 11 U.S.C. § 544 and other applicable law. The Court shall issue an injunction by separate order to prevent any further encumbrance, transfer, or disposition by the Defendants or a transferee of the Shawnee, Lenexa, and Gardner properties. Injunctive relief is available under both Mo. Rev.Stat. § 428.039 and 11 U.S.C. § 105 in the Court's exercise of its core jurisdiction to recover property of the Estate.

IT IS SO ORDERED.